In re Carol A. HOGARD, Debtor.

Kelley V. REA, Plaintiff,

v.

Carol A. HOGARD, Defendant.

Bankruptcy No. 4–83–1102.
Adv. No. 4–83–358.

United States Bankruptcy Court,
D. Minnesota.

Oct. 9, 1984.

David C. Beman, of Stern & Gurstel, Minneapolis, Minn., for defendant/debtor.

Kelley V. Rea, pro se.

## ORDER

MARGARET A. MAHONEY, Bankruptcy Judge.

The above-entitled matter came on for trial by the Court on September 7, 1984, before Margaret A. Mahoney, Judge of Bankruptcy Court. Plaintiff Rea brought suit against Defendant/Debtor Hogard objecting to Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3) (1982). Defendant counterclaimed for an injunction against Plaintiff and reasonable attorney's fees. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 (enacted 1984).

## FINDINGS OF FACT

1. Defendant Hogard filed a voluntary petition under Chapter 7 of the Bankruptcy Code on July 1, 1983.

2. On September 30, 1983, Plaintiff commenced an adversary proceeding seeking to have Defendant denied discharge pursuant to 11 U.S.C. § 727(a)(3) (1982).

3. During the trial of the adversary proceeding, Defendant introduced into evidence records concerning her financial condition and transactions from late 1979 to mid 1984. These records included the following:

(a) Check registers for August, 1979 through May 1980, and January through August 1981;

(b) Checks, deposit slips, and bank statements from F & M Marquette National Bank from June 1981 through June 1983;

(c) Bank statements from Twin City Federal Savings and Loan Association for year end 1980 and 1981, December 1982, and June 1983.

(d) State Capital Credit Union draft records from August 1983 through May 1984;

(e) 1980 tax records including pencilled-in state and federal tax forms, and receipts and cancelled checks for selected 1980 expenses (e.g., medical expenses, utilities, and bookstore purchases);

(f) 1981 tax records including pencilled-in state forms, and miscellaneous credit card charge records and receipts;

(g) A September 20, 1983, letter from the Teachers Retirement Association indicating (1) that as of June 30, 1983, Defendant had a balance of $10,673.50 in her retirement account, and (2) that as of September 1, 1983, Defendant had in her College Supplemental Fund account a total of 1191 shares, valued at $15.63 per share, for which she could receive a refund of approximately $9,308.98; [1]

(h) Miscellaneous paycheck stubs, receipts, and charge card records.

4. Defendant has as her primary source of income her employment as a teacher with the Minneapolis Community College, 1501 Hennepin Avenue, Minneapolis, Minnesota. As supplemental income, Defendant has also received over the past several years rental payments made by roommates, the records for which exist as entries on her checking account deposit slips. Such supplemental income was also dutifully declared on Defendant's income tax forms.

5. Aside from the check registers, cancelled checks, deposit slips, draft records, bank statements, tax records, and miscellaneous paycheck stubs, receipts, and charge card records which were introduced at trial, Defendant kept no other records of her financial affairs.

6. Substantially all of Defendant's purchases were paid for by check. Her financial records are deficient only as to cash expenditures for such items as food, clothing, gasoline, and parking, for which no records were kept.

7. Plaintiff's employment with the Minneapolis Community College is in the area of humanities and languages. She has never taught or taken any business courses.

8. No evidence whatsoever was introduced at trial with respect to a $10,000 long-term investment in the form of a certificate of deposit, a money market certificate, or other similar instrument, nor may any reasonable inference be drawn as to the existence of such an investment.

9. To the extent that Defendant might have made errors in responding to questions 2(e) and 5(d) on the Debtor's Statement of Financial Affairs, listing as liabilities on Schedule A amounts of $376 and $217 owed in back taxes, entering Plaintiff's $4,891.09 state court judgment in duplicate, indicating in Schedule B-3 the amount held in the Teachers' Retirement Fund as unknown, and failing to include in answers to interrogatories reference to credit union and Teachers' Retirement Fund deposits as monthly income, such errors were at most inadvertent mistakes.

10. Plaintiff is a judgment creditor of Defendant's in the amount of $4,891.09, as a result of a July 1982 Hennepin County Municipal Court judgment in favor of Plaintiff.

## DISCUSSION

■ Plaintiff raised as his sole contention in his pleadings that Defendant "concealed, destroyed, mutilated, falsified, or failed to keep or preserve" any recorded information from which Defendant's financial condition might be ascertained in violation of 11 U.S.C. § 727(a)(3).[2] In his post-

---

1. As Plaintiff introduced a pencilled-in copy of Defendant's 1982 federal income tax forms into evidence, he has implicitly waived any claim as to those forms. Such copy was apparently supplied to Plaintiff by Defendant prior to trial.

2. Section 727(a) provides in pertinent part:
   (a) The court shall grant the debtor a discharge unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

11 U.S.C. § 727(a)(3) (1982).

trial memorandum, Plaintiff apparently decided to expand his cause of action to cover four additional issues for which some scintilla of supporting evidence could be extrapolated from that presented at trial. As such additional issues, Plaintiff contends that Defendant: (1) failed to satisfy the § 101 bankruptcy definition for insolvency; (2) made a false oath or account or a false claim under 11 U.S.C. § 727(a)(4); (3) transferred property or failed to explain satisfactorily any loss or deficiency of assets pursuant to 11 U.S.C. § 727(a)(2) and (5); and (4) is not entitled to a homestead exemption under Minn.Stat. §§ 510.01–.09. While it is evident from the trial record that Bankruptcy Rule 7015 and Federal Rule of Civil Procedure 15 probably do not require consideration of these additional issues [3] it is clear in any event that all contentions raised by Plaintiff must fail.

First, Plaintiff contends that Defendant failed to produce the following books and records: (1) checking account statements; (2) State Capital Credit Union statements; (3) Twin City Federal statements; (4) state and federal tax returns;

(5) earnings statements; (6) receipts of rental income; (7) charge card statements and receipts; and (8) receipts for virtually all cash transactions. To varying degrees, and with the possible exception of receipts for cash transactions, Plaintiff's assertions are patently incorrect. At trial, Defendant introduced into evidence all records in her possession concerning her financial affairs. These records included bank statements from F & M Marquette National Bank, State Capital Credit Union, and Twin City Federal. Pencilled-in copies of Defendant's state and federal tax returns were submitted.[4] Earning statements were submitted in the form of miscellaneous paycheck stubs, deposit slips indicating rent received from roommates, bank statements detailing interest accrued, and tax returns listing income received. By Defendant's uncontradicted testimony, receipts for rental income existed in the form of notations on her bank deposit slips. Miscellaneous charge card statements and receipts were introduced as well.

While Plaintiff is correct in asserting that Defendant has not in all cases kept complete records and that Defendant has

---

3. Bankruptcy Rule 7015 provides that Federal Rule of Civil Procedure 15 applies in adversary proceedings. Rule 15(b) provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues.* If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Fed.R.Civ.P. 15(b) (emphasis added). While Rule 15(b) eliminates the need for formal pleadings of issues under certain circumstances, it retains the general notice and fairness require-

ments inherent in Rules 7, 8, and 9. A party should not be entitled to create new and unanticipated issues through the selective presentation of evidence and arguments in a post-trial memorandum. *Moore's Federal Practice* provides:

The implication of Rule 15(b) is that a trial court may not base its decision upon an issue that was tried inadvertently. Implied consent to the trial of an unpleaded issue is not established merely because evidence on that issue was introduced without objection. It must appear that the parties understood the evidence was aimed at the unpleaded issue. See MBI Motor Co. v. Lotus/East, Inc. (CA 6th, 1974) 506 F.2d 709, 19 FR Serv.2d 637.

3 J. Moore, *Moore's Federal Practice* ¶ 15.13[2] n. 28 (2d ed. 1984). It is not apparent that Defendant did understand or could have understood that any evidence admitted at trial was aimed at Plaintiff's four unpleaded issues.

4. Defendant's 1981 federal tax return and 1982 state tax return were not introduced into evidence. As to the pencilled-in status of those forms introduced, it was the uncontradicted testimony of Defendant that it was her practice to keep such rough copies for her personal records. Final ink copies were sent to the appropriate state and federal agencies.

not retained receipts for virtually all cash transactions, such assertions are irrelevant in the context of this debtor. "If the occupation or business is of a kind in which persons normally would not keep books or records, failure by the debtor so to do does not bar the discharge." 4 *Collier on Bankruptcy*, 727–41 (15th ed. 1984). One court has recently discussed the issue of justification as follows:

[T]he determination of whether a debtor is justified in failing to keep adequate books and records depends on the circumstances of each case. The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances. The inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.

*In re Wilson*, 33 B.R. 689, 692 (Bkrtcy., M.D.Ga.1983). *See In re Margolin*, 64 F.Supp. 213 (E.D.N.Y.), *aff'd sub/nom, Margolin v. Moskowitz*, 157 F.2d 872 (2d Cir.1946); *In re Weismann*, 1 F.Supp. 723 (S.D.N.Y.1932). Whether or not Defendant was required to keep or maintain any records whatsoever, it is clear that she was not required to produce the specificity of records sought by Plaintiff.

Plaintiff seeks to support his assertion by attempting to demonstrate that Defendant is not a novice in financial matters.[5] The Defendant's financial sophistication, however, is not the only factor. It must be considered in conjunction with her business or occupation and any other circumstances to be considered in the interest of justice.

The facts demonstrate that Defendant is not particularly sophisticated in business matters. As a home-owner attempting to handle mortgage payments, in addition to her bank accounts and several charge accounts, Defendant has not been entirely successful in managing her personal business affairs. Although apparently well educated, she has had no business courses nor any business exposure. Moreover, she neither operates nor is employed in any business such that she would be acquainted with any level of business record-keeping. Finally, as an individual in her employment circumstances, Defendant had no need to keep full and accurate records of her financial affairs. Clearly, to the extent that Defendant has not maintained records sought by Plaintiff, she was entirely justified.

■ Plaintiff next contends that Defendant failed to satisfy the bankruptcy definition for insolvency as provided in 11 U.S.C. § 101.[6] As a result, Plaintiff argues that Defendant should be denied discharge. Plaintiff cites no statutory or case authority, nor can the Court find or conceive of any, that would support the proposition

---

5. The Court is not persuaded by Plaintiff's reasoning that Defendant is sufficiently sophisticated in financial matters to warrant keeping more accurate and specific records than a normal person in like circumstances. It would be extraordinary to presume that Plaintiff could even meet the record-keeping standard he expects Defendant to meet.

6. Section 101(26) provides:

(26) "insolvent" means—

(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title; and

(B) with reference to a partnership, financial condition such that the sum of such partnership's debts is greater than the aggregate of, at a fair valuation—

(i) all of such partnership's property, exclusive of property of the kind specified in subparagraph (A)(i) of this paragraph; and

(ii) the sum of the excess of the value of each general partner's separate property, exclusive of property of the kind specified in subparagraph (A)(ii) of this paragraph, over such partner's separate debts;

11 U.S.C. § 101(26) (1982).

that a chapter 7 debtor must satisfy the section 101 bankruptcy definition. In fact no such requirement exists. 2 *Collier on Bankruptcy,* 101–43 (15th ed. 1984).

■ Plaintiff also asserts that Defendant made a false oath or account or a false claim pursuant to 11 U.S.C. § 727(a)(4). Specifically, Plaintiff asserts that in her petition Defendant: (1) failed to include certain 1982 rental income and to indicate the loss or destruction of certain cash receipts, credit card records, bank and credit union statements, and tax records in response to questions 2(e) and 5(d) in her Statement of Financial Affairs; (2) incorrectly listed as liabilities on Schedule A certain back taxes which were paid; (3) incorrectly listed Plaintiff's judgment against Defendant in duplicate; (4) failed to list in Schedule B–3 the actual amount contained in Defendant's Teachers' Retirement Fund account; and (5) failed to list certain deposits in response to answers to interrogatories. The Court renders no opinion as to the correctness of Plaintiff's assertions. Plaintiff failed to adequately demonstrate at trial and to argue in his brief that such errors were made with the requisite fraudulent intent. Therefore, Plaintiff's section 727(a)(4) objection must fail. *See In re Savel,* 29 B.R. 854, 857 (Bkrtcy.S.D.Fla.1983); *In re Irving,* 27 B.R. 943, 944 (Bkrtcy.E.D.N.Y.1983); *See also* 4 *Collier on Bankruptcy* 727–52 n. 14 (15th ed. 1984).

■ Next, Plaintiff contends that Defendant has transferred property or failed to explain satisfactorily any loss or deficiency of assets. The gravamen of this contention is that Defendant has either transferred or failed to explain the absence of a mysterious $10,000 investment. Plaintiff provides ample argument for denial of his own objection: "Defendant denied the existence of such monies or instruments, and her financial records do not show monies in that amount or financial instruments [indicating any such long term investment]." *Plaintiff's Post-Trial Brief* at 8. Plaintiff further correctly indicates that no other evidence was admitted. As such,

there has been no reasonable showing concerning the existence of any $10,000 long term investment. Plaintiff's objections under 11 U.S.C. § 727(a)(2) and (5) must fail.

Finally, Plaintiff contends that Defendant is not entitled to a homestead exemption under Minn.Stat. §§ 510.01–.09. As a result of such, Plaintiff argues that Defendant "has failed to satisfy the balance sheet insolvency test prerequisite as stated in 11 U.S.C. § 101." *Plaintiff's Post Trial Brief* at 5. In light of the Court's determination that no such prerequisite exists, any discussion of the availability of a homestead exemption is unnecessary.

As counterclaims, Defendant seeks (1) an injunction against Plaintiff from continued future contact with Plaintiff or her employer and from taking any future action outside the bankruptcy code to collect any claim against Defendant, and (2) reasonable attorney's fees. Whether or not an injunction would be appropriate or fees could be assessed under section 727, Defendant has failed to make any offering of proof regarding such claims. Consequently, the Court is precluded from so considering them.

### ORDER FOR JUDGMENT

THEREFORE, IT IS HEREBY ORDERED that:

1. Plaintiff's objections to discharge are denied.

2. Defendant's request for an injunction and attorney's fees is denied.