In re Patrick and Janet SZIEL, Debtors.

AT & T UNIVERSAL CARD SERVICES, CORP., Plaintiff,

v.

Patrick M. SZIEL, Defendant.

Bankruptcy No. 96 B 15237.
Adversary No. 96 A 01294.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 24, 1997.

Bruce E. de'Medici, Oak Park, IL, for Plaintiff.

Lawrence Korrub, Chicago, IL, for Defendant.

## MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

This is a routine adversary proceeding alleging that the Debtor committed fraud in the use of a credit card. Indeed, the problem is that it is too routine. The Debtor is in default and the plaintiff wants a judgment. Notwithstanding the Debtor's failure to appear and defend this action, this Court finds that AT & T has not established grounds for finding the debt nondischargeable under § 523(a)(2)(A). Accordingly, the motion for default and default judgment is denied. On the Court's own motion the adversary proceeding is dismissed because the complaint fails to state a claim for relief.

### BACKGROUND

The Debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on June 12, 1996. The Chapter 7 trustee concluded that the Debtors had no assets to be administered and filed his report so indicating on July 29, 1996. On October 10, 1996, this Court granted the Debtors a discharge of all debts, other than any debts excepted from discharge by § 523(a). On September 18, 1996, AT & T Universal Card Services, Corp., ("AT & T") filed an adversary proceeding against one of the Debtors, Patrick M. Sziel, ("Debtor") to have a debt for credit card purchases and fees in the amount of $3,031 declared nondischargeable under § 523(a)(2)(A). The summons and complaint were served upon the Debtor and his attorney, Lawrence Korrub. They failed to answer, and on November 26, 1996, AT & T requested that a default and default judgment be entered against the Debtor. Again, neither the Debtor nor his attorney responded.

According to the unanswered complaint, as of the filing of the case, the balance due AT & T was $3,031.02. AT & T alleged that between March 18 and June 12, 1995, the Debtor "began a systematic withdrawal of the entire available credit line" consisting of twenty purchases totaling $2,691.26. The complaint does not allege what was "systematic" about this use of the credit card. After the charges were made and before the bankruptcy case was filed, the Debtor made a single payment totaling $100.

The remaining allegations of the complaint consist of conclusions of law or fact, i.e., that the Debtor never intended to repay the debt,

that the Debtor did not have the ability to repay the debt, that he intended to defraud AT & T and that such actions constituted a misrepresentation that was reasonably relied upon by AT & T. No facts are alleged in support of those conclusions.

## DISCUSSION

### Default Judgments in Dischargeability Actions

The New York Times reports that, "Over the last three years, Americans have received in the mail more than eight billion offers for credit cards." The New York Times, C1 (March 18, 1997). As the Times goes on to report, the rate of defaults is growing. Not surprisingly, these trends are having consequences in bankruptcy that have come to the attention of courts and commentators. As they have noted, issuers do not ask debtors to make any serious representations about their finances before issuing cards, but wait until bankruptcy to "make their first meaningful investigation into a debtor's financial condition." *In re Chinchilla,* 202 B.R. 1010, 1016 (Bankr.S.D.Fla.1996).[1] See also, Lisa K. Gorman, Rethinking Credit Card Fraud and § 523(a)(2)(A), Norton Bankr.L. Adviser 1 (Feb. 1997). Then the issuer may charge that the debtor committed fraud by using the card without intending to pay the resulting bills. That charge is made, as in this case, in a complaint filed in the bankruptcy to except the debt from the debtor's discharge under § 523(a)(2)(A).[2]

Once such a complaint is filed, the ordinary rules of procedure are invoked (see Fed. R.Bankr.P., 7001, *et seq.*), and the debtor must defend the charge if he or she wants to preserve the full value of the bankruptcy fresh start. Many consumer debtors are in such precarious financial condition when they file bankruptcy, however, that they can ill afford to pay additional fees to defend a

lawsuit.[3] These circumstances create a risk that the card issuers may coerce settlements from unrepresented consumers or obtain default judgments, regardless of the merits of the complaint. *Cf. In re Grayson,* 199 B.R. 397, 396–97 (Bankr.W.D.Mo.1996)(dealing with settlements entered into for similar financial reasons). This is not a newly discovered risk. Congress enacted § 523(d) (allowing fees to consumer debtors who prevail in dischargeability proceedings) to deal with this problem. See H.R.Rep. No. 595, 95th Cong., 2d Sess. 131, reprinted in 1978 U.S.Code Cong. & Admin. News. pp. 5787, 5963, 6092. *See also, Chinchilla,* 202 B.R. at 1013 (Bankr.S.D.Fla.1996)("Section 523(d) of the Code was enacted for the protection of consumer debtors such as Mr. Chinchilla. It is intended to prevent a creditor from bringing a dischargeability action in order to coerce a settlement from and honest debtor who cannot afford to litigate.") Of course, § 523(d) is effective only when the debtor is represented by an attorney. The problem presented by this case is the vulnerability to abuse of unrepresented debtors.

■ Because of these concerns, this and other courts have become hesitant to "rubber stamp" motions for default judgments and agreed judgments in § 523(a)(2)(A) actions, particularly when the allegations of fraudulent intent are as conclusory as they are here. Under Fed. R. Bank. P. 7055, courts have broad discretion to "conduct such hearings ... as it deems necessary and proper" to determine whether a default judgment should be entered. *In re Beltran,* 182 B.R. 820, 824 (9th Cir. BAP 1995); *In re Villegas,* 132 B.R. 742, 746 (9th Cir. BAP 1991) ("Given the conclusory nature of [Plaintiff's] allegations regarding the knowing or fraudulent nature of the alleged false oaths, the bankruptcy court acted within its discretion in requiring a hearing to consider proof of the

---

1. In *Chinchilla* the court found it appalling that the plaintiff relied on the debtor's inability to repay as evidence of fraudulent intent, since it actively markets its credit card to numerous consumers with limited knowledge of the consumer's financial condition. *Id.* at 1015.

2. That section excepts from discharge debts "to the extent obtained, by—(A) false pretenses, a

false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

3. The rules of this Court do not require an attorney who is retained to file the bankruptcy case to appear in a related adversary proceeding. Local Rule 604B.

facts necessary to deny the discharge.") This discretion has been exercised in bankruptcy cases where the complaint contains general allegations of fraud and requests denial of discharge (*Villegas*) or a determination of nondischargeability (*Beltran*).[4]

■ This Court, therefore, required AT & T to substantiate its allegations of fraud. It attempted to do so by serving requests for admissions and interrogatories on the Debtor. Again the Debtor failed to respond. Generally when a party fails to respond to requests for admissions the matters are deemed admitted. Fed. R. Bankr.P. 7036. But the requests here are no less conclusory than the complaint. Like the complaint, they lack specific factual statements that support the conclusion that the Debtor committed fraud when he used the credit card.

■ Moreover, even though entry of a default results in admission of the allegations of the complaint, the plaintiff is not automatically entitled to entry of a default judgment. *Beltran*, 182 B.R. at 823. Entry of a judgment of default is discretionary with the trial judge and may be denied where there are insufficient facts to support a cause of action. *Peerless Indus., Inc. v. Herrin Illinois Cafe, Inc.*, 593 F.Supp. 1339 (E.D.Mo.1984), *aff'd*, 774 F.2d 1172 (8th Cir.1985). Accordingly, it is consistent with the requirements of Rule 7055 to refuse to rely upon the "deemed admitted" effect of a failure to respond to requests to admit as support for the motion for default judgment.

This leaves us where we started: with a skeletal complaint containing conclusory allegations of fraud, based upon the sole fact that several charges were made one year before the bankruptcy petition was filed.

### Elements of Nondischargeability Under § 523(a)(2)(A)

■ A debt is excepted from discharge under § 523(a)(2)(A) if the credit was obtained by false pretenses, a false representation or actual fraud. As this Court and others have stated, this sub-section is not

well-suited to credit card debts. *See In re Murphy*, 190 B.R. 327 (Bankr.N.D.Ill.1995); *In re Briese*, 196 B.R. 440 (Bankr.W.D.Wis. 1996); Gorman at 1–2. However, unless the charges were for luxury goods in excess of $1,000 that were incurred within sixty days preceding the filing of the petition and thus presumed nondischargeable under § 523(a)(2)(C), it is the only discharge exception generally available to challenge credit card debts. There is no special credit card exception to discharge.

■ In *Murphy*, this Court concluded that the use of a credit card constitutes a promise to pay, but refused to equate inability to repay with intent not to repay. *See Murphy*, 190 B.R. at 332. Instead, this Court, following *Field v. Mans*, —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), concluded that a creditor relying on the fraud exception to dischargeability must satisfy the common law standard of fraud, which requires establishing a subjective intent to defraud. *See also, Briese*, 196 B.R. at 449–51. Of course proving subjective intent to defraud involves an analysis of all the circumstances. *Murphy*, at 333–34.

■ The only "evidence" of fraud here is that the Debtor made twenty purchases, totaling $2,691.26, more than one year before filing bankruptcy and made only one payment of $100.00 on the account. AT & T also submitted a summary of the account along with the unanswered discovery. The summary showed that although the Debtor had purchased more than $2,000 worth of merchandise (or possibly services; AT & T apparently did not think what the Debtor had purchased was relevant to its claim), approximately $1,500 was credited to the account, perhaps due to returns, during this same period. In addition, while the complaint alleges that the Debtor made a "systematic withdrawal of the entire available credit line," AT & T's response to the Debtor reaching his credit limit was to raise it from

---

**4.** In both *Villegas* and *Beltran* the courts required the defendants to appear under subpoena power and testify. In both cases the courts

$2000 to $3000.[5] So apparently AT & T did not view that "systematic withdrawal" as evidence of fraud at the time. *Cf. Chinchilla* at 1015 ("How can AT & T now point to Mr. Chinchilla exceeding his limit by $100 as an 'indicia of fraud' when its response at the time was to immediately grant him an additional $2,000 in unsolicited credit?")

This Court is unwilling to infer fraudulent intent from such limited evidence. The number and amount of the charges alone are insufficient to establish that the Debtor intended to defraud AT & T at the time he incurred the debts. It is doubtful that this Court would be willing to infer fraudulent intent from this limited "evidence" even if the Debtor had filed his petition on June 18, 1995, shortly after the "spending spree" complained of. But he did not; the bankruptcy petition was not filed until nearly one year later. That time interval does not suggest that the Debtor incurred the debt while planning to discharge it in bankruptcy.

AT & T has failed to submit any other evidence from which this Court could infer that the Debtor did not intend to repay the charges. There is no evidence of the Debtor's financial circumstances at the time the charges were made, whether he was employed, whether he had financial problems, whether the purchases were for luxuries or necessities, or whether he had consulted an attorney about filing a bankruptcy before the charges were made. These are all factors that courts consider when determining whether a debtor had the intent to defraud when making credit card purchases. *See In re Berz,* 173 B.R. 159, 163 (Bankr.N.D.Ill. 1994).[6]

In fact, an action premised upon the minimal evidence relied upon here would not meet the "substantially justified" requirement of § 523(d) and would result in an award of fees and costs to the debtor. *See Grayson,* 199 B.R. at 403; *Chinchilla,* 202 B.R. at 1018; *In re Duplante,* 204 B.R. 49 (Bankr.S.D.Cal.1996); *In re Willett,* 125 B.R. 607 (Bankr.S.D.Cal.1991).[7] While sanctions under § 523(d) are not at issue here, those cases are instructive as to what evidence should be presented before a default judgment is entered under § 523(a)(2)(A). Certainly, a plaintiff that could not even pass muster under the "substantially justified" test Congress imposed to protect debtors from coercive lawsuits should not be rewarded when a debtor does not defend such a suit, probably because he or she cannot afford a lawyer.

In each of the cases cited above, the court found that despite the fact that the debtor's subjective intent was a key element of the claim, the plaintiff had performed no prefiling investigation to determine if such allegations were justified. In bankruptcy, creditors have access to significant investigative tools. But in these cases the plaintiffs did not attend the meeting of creditors mandated by § 341, conduct an examination of the debtor under Fed. R. Bankr.P.2004, or even informally contact the debtor or the debtor's attorney to determine if there were special circumstances, such as the loss of a job, that precipitated the filing. Instead, the plaintiffs alleged fraud solely on the basis of the debtor's purchases on the credit card and subsequent bankruptcy filing a couple of months later.[8] The courts found such allegations wholly insufficient to support a claim of fraud and awarded fees under § 523(d).[9] There is

found insufficient evidence of fraud and denied the motions for default judgment.

5. The credit limit was reduced to $2,900 in June 1995, and to $2,800 in July 1995.

6. *See also Murphy,* 190 B.R. at 334 explaining that factors should not merely be counted, but considered together to "determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent."

7. AT & T was the plaintiff in three of the four cases cited above. AT & T appears to be one of

the more aggressive credit card issuers in pursuing nondischargeability claims against consumer debtors. Undoubtedly other issuers appreciate the contributions AT & T is making to the development of the law.

8. None of the cases was under § 523(a)(2)(C), which carries a presumption of fraud for luxury purchases within 60 days of filing.

9. In each of these cases the creditor later admitted the deficiency of its allegations and tried to dismiss the action, but was prevented from doing so until a hearing could be held to determine if the creditor was "substantially justified" in

no evidence here that AT & T conducted any investigation other than a review if its own records, and its allegations in this proceeding are no better.

Even when debtors agree to the entry of judgments, courts have chosen to intervene. In *Grayson,* the court expressed concern over "rubber stamping" settlements of dischargeability actions and instead indicated that it would not approve "a judgment of nondischargeability without some evidence that there is a reasonable basis for the entry of same, that the debtor both understands and agrees to the terms, and that the debtor is aware of his or her right to a trial on the merits." *Id.* at 401.[10] The court noted that the Bankruptcy Code protects the unsophisticated debtor from coercion by the more sophisticated creditor by requiring court approval of various agreements: settlement agreements (Rule 9021), reaffirmation agreements (§ 524(c)(3)), and agreements to waive discharge (§ 524(a)(2)). If a debtor who has consented to an order of nondischargeability is entitled to such protection because of the inherently coercive economics of the situation, surely so is a defaulting debtor.

## CONCLUSION

 Entry of a default judgment is discretionary with the trial court and may be denied where there are insufficient facts to support the claim. Under the circumstances currently existing in the consumer debt arena it is incumbent upon the bankruptcy courts to ensure that the "fresh start" policy is not being violated by entry of default judgments and "agreed" orders in baseless nondischargeability actions. In order to avoid that result, this Court will require evidence of some facts tending to support the plaintiff's allegations of fraud before it will enter a default judgment or agreed order settling an action. The creditor has a num-

ber of methods for establishing the validity of its claim, including presenting transcripts of § 341 meetings or Rule 2004 examinations or other documentary evidence establishing the "badges of fraud." In some instances it may be necessary to hold a hearing with the debtor brought before the court under subpoena power.

In this case, the Court finds that the Plaintiff has failed to establish sufficient facts to support its claim under § 523(a)(2)(A). Indeed, under the authorities cited above and Fed.R.Civ. P. 9 (Bankr.R. 7009) (requiring that the "circumstances constituting fraud ... shall be stated with particularity"), the complaint fails to state a claim for relief. Accordingly, the Application for Default and Default Judgment is denied and the complaint is dismissed.

An Order will be entered in accordance with this opinion.

---

bringing the action. In *Grayson,* AT & T advised the court at a pre-trial conference that it had reached a settlement with the debtor. The court was concerned that the allegations of fraud were unsupportable and indicated that it would hold a hearing on approval of the settlement. AT & T attempted to avoid such a hearing by offering to dismiss the adversary and then have the debtor reaffirm the debt. However, the court reminded AT & T that that course of action would also

require court approval under § 524(c)(3). Apparently recognizing that its coerced settlement would not pass court approval, AT & T offered to withdraw the complaint on the grounds that it would not be economical to pursue. At some point, however, the debtor's attorney finally woke up and filed a motion for fees under § 523(d).

**10.** This Court has adopted a similar policy.