In the Matter of Donald
M. PARK, Debtor.

Maryann Riehm, Plaintiff,

v.

Donald M. Park, Defendant.

Bankruptcy No. 99–20890/JHW.
Adversary No. 00–1300.

United States Bankruptcy Court,
D. New Jersey.

July 27, 2001.

Paul R. Melletz, Cherry Hill, NJ, for Plaintiff.

Donald M. Park, Jr., Palmyra, NJ, Debtor Pro Se.

## OPINION ON MOTION FOR DEFAULT JUDGMENT

JUDITH H. WIZMUR, Bankruptcy Judge.

Plaintiff moves here for the entry of a default judgment against the debtor defendant who is proceeding pro se. Plaintiff's complaint seeks to deny the debtor's discharge under 11 U.S.C. § 727(a)(2), (a)(3) and (a)(5). When the debtor failed to respond to the complaint, default was entered against him on March 19, 2001. Plaintiff now seeks the entry of a default judgment, denying the debtor his discharge and awarding attorneys' fees and costs to the plaintiff. For the reasons expressed below, we must deny plaintiff's request for the entry of a default judgment, but will offer to the plaintiff a proof hearing to provide sufficient basis for the relief sought.

## FACTS.

Donald M. Park filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on December 13, 1999, listing Maryann Riehm as an unsecured creditor with respect to a personal loan for an unspecified amount. The debtor also scheduled an unsecured claim in the amount of $6,000 owed to David M. Goren-berg, Esq. for legal fees. David Gorenberg was legal counsel to Ms. Riehm in a family court action between the parties. Ms. Riehm filed a proof of claim on December 15, 2000 asserting past due obligations totaling $15,304.00, of which $8,279.00 represented child support arrearages, $6,350.00 was for attorneys' fees, and $675.00 was for summer camp expenses. Ms. Riehm was awarded $6,000 of the attorneys fees by Judge Thomas S. Smith, Jr., J.S.C. in a May 19, 1999 supplemental order in the New Jersey Superior Court, Chancery Division, Family Part, Burlington County, in connection with a domestic violence action. The remaining $350 of attorneys' fees and the summer camp expenses were awarded by Judge Marie E. Lihotz, J.S.C. on December 17, 2000 on Ms. Riehm's motion to enforce the May 19, 1999 Superior Court order.[1]

Ms. Riehm also filed an objection to the confirmation of the debtor's plan, arguing that her priority claim must be paid in full over the course of the plan in accordance with 11 U.S.C. § 1322. In response, the debtor moved to disallow, reduce or adjust Ms. Riehm's claim. Debtor's motion was considered on June 5, 2000 and granted, reclassifying the $6,000 attorneys' fees portion of Ms. Riehm's claim into two portions, half as an unsecured priority claim and half as an unsecured general claim. The extent of the priority claim was set at $12,304, while the remaining $3,000 was classified as a general unsecured claim. An order to this effect was entered on June 26, 2000. The debtor's Chapter 13 case was voluntarily converted to Chapter 7 on August 7, 2000.

Ms. Riehm filed this adversary complaint against the debtor on November 13,

---

1. Although this hearing was held four days after Mr. Park filed for bankruptcy, Judge Lihotz declined to accept the debtor's assertion that he had filed for bankruptcy protection because he was unable to produce a file stamped copy of his petition or a case number.

2000, alleging that the debtor placed his assets, specifically a camper, a moped and an automobile, in the name of his girlfriend, Kelly Cuspelich. Plaintiff also questioned the value of the tools scheduled by the debtor, and the amount of income claimed by the debtor in his petition, which she claimed was inconsistent with his tax returns. Plaintiff sought to prevent the debtor from discharging any claims pursuant to 11 U.S.C. § 727(a)(2), (a)(3) and (a)(5), and asked for attorneys' fees and costs.[2]

When the debtor failed to respond to the adversary complaint, default was entered on March 19, 2001. On April 9, 2001, the debtor contacted the court and explained that he had failed to respond because he had assumed that his bankruptcy counsel, John R. Crayton, Esq., would have handled the matter. In response to the debtor's request for a new hearing, a status conference was scheduled for June 25, 2001. The debtor and his counsel again failed to appear in court. On July 2, 2001, Ms. Riehm moved for default judgment. The debtor has not responded.

---

**2.** Although plaintiff's complaint also asks that her claim not be discharged, no specific reference to 11 U.S.C. § 523 is made. Accordingly, we do not address here plaintiff's entitlement to relief under this Code section.

**3.** Rule 55(b) provides:

**(b) Judgment.** Judgment by default may be entered as follows:
(1) By the Clerk. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.
(2) By the Court. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judg-

## DISCUSSION.

█ Bankruptcy Rule 7055 incorporates Rule 55 of the Federal Rules of Civil Procedure, and provides the mechanism by which default judgments are obtained.[3] Obtaining a default judgment involves a two step process. First, default must actually be entered against the non-appearing party. Second, after the entry of default, the movant must request the entry of a default judgment. Although application for the entry of a default and default judgment are often submitted simultaneously to a court, the two procedural steps are analytically independent, and each step has distinct consequences. The entry of default does not automatically entitle the nondefaulting party to the entry of a default judgment. *In re Beltran,* 182 B.R. 820, 823 (9th Cir. BAP 1995); *In re Villegas,* 132 B.R. 742, 746 (9th Cir. BAP 1991); *In re Ripple,* 242 B.R. 60, 63 (Bankr.M.D.Fla.1999); *In re Sziel,* 206 B.R. 490, 493 (Bankr.N.D.Ill.1997), *reconsideration denied,* 209 B.R. 712. Instead, the general effect of an entry of default is

---

ment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

to deem the allegations contained in a complaint as admitted. *Beltran,* 182 B.R. at 823; *Sziel,* 206 B.R. at 493; *In re Cruz,* 198 B.R. 330, 332 (Bankr.S.D.Ca.1996). Accordingly, a defaulting party may not attack the factual allegations in a complaint; however, that does not mean that the party admits to the legal conclusions made in the complaint. *Soshnik v. Bruens,* 851 F.2d 361, 1988 WL 69804, *1 (9th Cir. June 22, 1988) (Unpublished opin.) ("only factual allegations are admitted by default, not liability or legal conclusions"); *Larance v. Bayh,* No. 3:94–CV–182RM, 1995 WL 46718, *1 (N.D.Ind. Jan. 18, 1995), *aff'd,* 85 F.3d 631 (7th Cir.1996); *Weft, Inc. v. G.C. Investment Assocs.,* 630 F.Supp. 1138, 1141 (E.D.N.C.1986), *aff'd* 822 F.2d 56 (4th Cir.1987); *In re Cruz,* 198 B.R. 330, 332 (Bankr.S.D.Cal.1996); *In re Wildlife Center, Inc.,* 102 B.R. 321, 325 (Bankr.E.D.N.Y.1989). *See also* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCED., CIVIL 3d, § 2688 at 447–48 (1998); 6 J. MOORE & W. TAGGART, MOORE'S FEDERAL PRACTICE ¶ 55.03[2] at 55–20 (2d Ed.1996). "Even after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit to mere conclusions of law." *Wildlife Center,* 102 B.R. at 325.

■ To be entitled to entry of a judgment by default, the "plaintiff must demonstrate a *prima facie* case by competent evidence." *In re Bui,* 188 B.R. 274, 276 (Bankr.N.D.Ca.1995). "Although a defendant may technically be in default, the plaintiff's claim against him is not necessarily established. The court must consider whether the plaintiff's allegations are sufficient to state a claim for relief. If the plaintiff's claim lacks merit and is unsupported by the law, the court may deny a motion for default judgment despite the technical default." *In re Wall,* 127 B.R. 353, 355 (Bankr.E.D.Va.1991) (citations omitted). A trial court has wide discretion in determining whether to enter a default judgment, and its decision will not be overturned, unless there is an abuse of discretion. *Mason & Hanger—Silas Mason Co. v. Metal Trades Council of Amarillo,* 726 F.2d 166, 168 (5th Cir.1984) ("The court could have entered a default judgment but chose not to do so. We do not find an abuse of discretion."); *Schiff v. State of R.I.,* 199 B.R. 438, 441 (D.R.I.1996) ("The decision to enter a default judgment is a decision committed to the 'sound judicial discretion' of the trial judge."); *Sziel,* 206 B.R. at 493 ("Entry of a judgment of default is discretionary with the trial judge and may be denied where there are insufficient facts to support a cause of action."). In reviewing the movant's motion for the entry of a default judgment, we must consider:

(1) the possibility of prejudice to the plaintiff;

(2) the merits of plaintiff's substantive claim;

(3) the sufficiency of the complaint;

(4) the sum of money at stake in the action;

(5) the possibility of a dispute concerning material facts;

(6) whether default was due to excusable neglect; and

(7) the strong policy underlying the Federal Rule of Civil Procedure favoring decisions on the merits.

*Villegas,* 132 B.R. at 746 (citing *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986)).

■ Plaintiff seeks to deny the debtor his discharge under 11 U.S.C. §§ 727(a)(2), (a)(3) and (a)(5). Section 727 has been described as the "heart of the fresh start provisions of the bankruptcy law."

H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 98 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 5787. It is an extreme remedy that should not be taken lightly, and its application should be construed liberally in favor of the debtor. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993).

■■■ Under 727(a)(2)[4], the plaintiff must show that the act complained of was:

(1) done by the debtor and;

(2) involved transferring, removing, destroying, mutilating or concealing any of the debtor's property;

(3) within one year before the date of the petition or postpetition;

(4) with the actual intent to hinder, delay, or defraud a creditor.

*In re Scimeca*, Adv. No. 91–2615, 1993 WL 744485 (Bankr.D.N.J. July 14, 1993), *aff'd*, 169 B.R. 536 (D.N.J.1993). *See also In re Brown*, 108 F.3d 1290, 1293 (10th Cir. 1997). A transfer is defined in section 101 as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54).

■■■ The party objecting to the discharge under section 727(a)(2) must prove that "an act (i.e. a transfer or a concealment of property) and an improper intent . . . were present during the one year period before bankruptcy; anything occurring before that one year period is forgiven." *Rosen*, 996 F.2d at 1530. However an act may occur outside that one year period and still be actionable under section 727(a)(2) if it involves a "continuing concealment." *Id.* at 1531. The rationale under this doctrine is that "a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year." *Id.* This principle "recognizes that a failure to reveal property previously concealed can, in some circumstances, properly be considered culpable conduct during the year before bankruptcy warranting a denial of discharge." *Id.* To satisfy the concealment doctrine, the debtor must have had a property interest to conceal, and the concealment must have been motivated by an improper intent.

■■■ Section 727(a)(2) does not require proof of fraud. Proof of intent to hinder or delay creditors is sufficient to satisfy the intent requirement. The intent that we are considering is not necessarily the intent at the time of the actual transfer, especially where it is outside of the one year period, but rather the intent during the critical one year time period. *Id.* at 1533.

■■■ Here, we have nothing more than plaintiff's bare allegations that property was transferred from the debtor to Kelly Cuspelich, and that the debtor owns property with substantially greater value ($50,-

---

4. Section 727(a)(2) provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—

. . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be, transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).

000 rather than the disclosed value of $8,000) than reported. In her certification dated April 18, 2001, plaintiff does not even mention the camper, moped and automobile. As to the tools asserted by plaintiff to be worth $50,000, plaintiff's opinion is based on her being "fully aware of the hand and power tools owned by Mr. Park. I lived with him for a number of years before our separation and I estimate the value of these tools to be at least $50,000." Certification of Maryann Riehm, ¶ 7, April 18, 2001. As to the camper, moped and Nissan automobile, the plaintiff has not offered any evidence that the property belonged to the debtor, or any other evidence supporting the allegation of a transfer from him to Ms. Cuspelich. There is insufficient factual basis provided to support a denial of discharge under § 727(a)(2).

■■■■■ The purpose of section 727(a)(3)[5] is to afford the court and all interested parties complete, accurate and dependable information to understand the debtor's financial history. *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir.1992). The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition pre-cedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.

*Id.*

■■■■■ The Third Circuit, determined in *Meridian*,[6] that the duty to maintain records and information depends on the facts of each case, therefore what constitutes "failure" will vary. 958 F.2d at 1230. Records need not be kept in any special manner, and there is not any rigid standard in record keeping; the debtor is required to maintain only what is reasonable in the circumstances. *Id.* The court further explained that the test should be " 'whether there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.' " *Id.* (quoting *In re Decker*, 595 F.2d 185, 187 (3d Cir.1979)).

■■■■■ Here, we have no allegation in the complaint or in the supporting certification alleging a failure to keep records. Although the plaintiff questions the debtor's income and expenses, as reported in his schedules, in comparison to his tax returns, this discrepancy does not convert to

---

**5.** Section 727(a)(3) provides that:

(a) The court shall grant the debtor a discharge, unless—

. . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a).

**6.** In *Meridian*, the debtor, an attorney, was held to a higher level of accountability for record keeping because he was a sophisticated business person. The debtor's argument that because his practice was small was not sufficient justification, by itself, for his complete lack of record keeping. *Id.* at 1232. However, where a debtor is not particularly sophisticated in business matters, and is without exposure to business record keeping practices, a failure to retain receipts for every cash transactions, would be justified in those circumstances. *In re Hogard*, 43 B.R. 590 (Bankr.D.Minn.1984).

a denial of a discharge under § 727(a)(3) based on a failure to keep or maintain books and records.[7]

 Under section 727(a)(5) [8], " 'the plaintiff has the initial burden of identifying the assets in question by appropriate allegations in the complaint and showing that the debtor at one time had the assets but they are no longer available for the debtor's creditors.' " *In re Brien,* 208 B.R. 255, 258 (1st Cir. BAP 1997) (quoting *In re Potter,* 88 B.R. 843, 849 (Bankr. N.D.Ill.1988)). The plaintiff "must introduce more than merely an allegation that the debtor has failed to explain losses, e.g., the objector must produce some evidence of the disappearance of substantial assets or of an unusual transaction which disposed of assets." *In re Ishkhanian,* 210 B.R. 944, 953 (Bankr.E.D.Pa.1997). There is no requirement, however, that the plaintiff show that the debtor acted fraudulently or intentionally. *Id.* Again, the plaintiff herein has failed to provide sufficient factual foundation for the allegation that the debtor owned the particular assets mentioned at one time, but that those assets are no longer available to the debtor's creditors.

For the reasons expressed above, plaintiff's motion for the entry of default judgment is denied without prejudice. A final proof hearing will be scheduled for court. Testimony and documentary evidence submitted by the plaintiff will be accepted, and a determination made as to whether sufficient factual foundation has been sup-

---

**7.** I note that although the plaintiff, in her certification, relies on information in the debtor's 1998 and 1999 tax returns, the returns are not appended to her certification.

**8.** Section 727(a)(5) provides that:
(a) The court shall grant the debtor a discharge, unless—

plied to warrant the entry of judgment in plaintiff's favor.

. . .
(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.
11 U.S.C. § 727(a)(5).