In re Alexander LEVITSKY and Svetlana Levitsky d/b/a Computers International, Debtors.

SUPERCOM, INC., Plaintiff,

v.

Alexander LEVITSKY and Svetlana Levitsky, Defendants.

Bankruptcy No. 90–02621–JES.
Adv. No. 90–0387.

United States Bankruptcy Court,
E.D. Wisconsin.

Jan. 17, 1992.

Charles H. Barr, Milwaukee, Wis., for plaintiff.

Gerald M. Schwartz, Milwaukee, Wis., for defendants.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The plaintiff ("Supercom") seeks a determination that the debt owed to it by the defendants be declared nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code. A trial was held on October 24, 1991.

Supercom sold computer parts to the debtor, Alexander Levitsky, a sole proprietor doing business as Computers International.[1] Levitsky was in the business of selling and servicing computers and had an ongoing business relationship with Supercom since 1989. Five separate business transactions involving five worthless checks totalling $8,784 form the basis for this adversary proceeding.

The established business practice between Levitsky and Supercom was for Computers International to telephonically place orders with Supercom. Supercom would then ship the computer parts ordered on a C.O.D. basis. Upon delivery through UPS, Levitsky would receive the parts in exchange for checks payable to Supercom. The five orders involved in this adversary proceeding were placed between March 14 and March 28 of 1990. Up to that time, their arrangement worked very smoothly. During the period in question, however, Levitsky found himself between business locations. He had previously operated at 305 West Silver Spring Drive, Glendale, Wisconsin ("Silver Spring location") but was locked out of these premises by the landlord at the end of February,

---

1. All references to Computers International shall also mean Alexander Levitsky and vice versa.

1990. Levitsky testified the lease expired at that time and was not renewed. The landlord has filed a proof of claim in this case for unpaid rent and other charges totalling $17,653.84.

Levitsky made arrangements to operate at a new location on North Water Street ("Water Street location") after February of 1990 but was prevented from doing so because he could not obtain an occupancy permit due to certain building defects. Levitsky, however, was able to gain entry to the Water Street location to store his computer parts. During this gap period, he neither transferred the company mail to his home nor to a post office box. He did, however, function on a limited basis by placing orders with suppliers and then meeting the UPS carrier outside of the Silver Spring location, picking up the computer parts and storing the parts at the Water Street location.

All five checks in exchange for the orders placed between March 14 and March 28 of 1990 were dishonored by the drawee, First Financial Bank, F.S.B. Supercom delivered the ordered parts before being notified that these checks were "NSF."

Levitsky insists he did not know, when he wrote these checks, that his checking account was overdrawn. (He is not contending that any of the checks were postdated.) He also maintains that he believed a separate $20,000 certificate of deposit which he had with First Financial Bank, F.S.B. would be transferred to cover his checking account if it was overdrawn. This $20,000 certificate of deposit had previously been pledged by him in lieu of an appeal bond in another lawsuit.

■ For Supercom to prevail under § 523(a)(2)(A) of the Bankruptcy Code, it must prove that:

1. The debtor obtained property through representations which the debtor either knew to be false or were made with such reckless disregard for the truth as to constitute willful misrepresentation,

2. The debtor possessed an intent to deceive and

3. The creditor actually relied upon the false representation and that its reliance was reasonable.

*In re Kimzey*, 761 F.2d 421, 423 (7th Cir. 1985). It is now settled that the burden of proof required to establish a nondischargeability claim under § 523(a) is preponderance of the evidence, rather than clear and convincing evidence. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ There is no issue with respect to the element of Supercom's reliance. Before any of the five "NSF" checks were issued, Supercom never encountered any problems with checks it received from Levitsky. Because of this, Supercom was clearly justified in delivering the parts ordered in exchange for the five checks and prior to learning that any of the five checks were "NSF." Its reliance, under these circumstances, was reasonable.

The key issues concern the other two elements under § 523(a)(2)(A):

1. When Levitsky obtained the computer parts upon issuance of the five checks, did he know there were insufficient funds in his checking account to cover them?

2. Did Levitsky intend, at the times he issued these checks, to deceive Supercom?

■ Levitsky's state of mind in March of 1990 is crucial. Intent rarely, if ever, can be proven directly. It must be inferred from the surrounding circumstances. *Matter of Cicero* 28 B.R. 480, 484 (Bankr. E.D.Wis.1983); *In re Johnson*, 40 B.R. 756, 759 (Bankr.D.Minn.1984); *In re Liptak*, 89 B.R. 3, 5 (Bankr.W.D.Pa.1988). Although there is a split of authority, this court believes the better view is that the mere issuance of a worthless check, without more, is not fraud. *In re Scarlata*, 127 B.R. 1004, 1009 (N.D.Ill.1991); *In re Collins*, 28 B.R. 244, 247 (Bankr.W.D.Okl. 1983); *In re Lamb*, 28 B.R. 462, 465 (Bankr.W.D.La.1983); *In re Hunter*, 83 B.R. 803, 804 (M.D.Fla.1988); and *In re Horwitz*, 100 B.R. 395, 398 (Bankr.N.D.Ill. 1989). In order to ascertain Levitsky's underlying intent, the court must assess his

demeanor and analyze the particular circumstances involved.

■ The facts abundantly demonstrate that when Levitsky issued all five checks, he either knew he had insufficient funds in his checking account to cover them or acted with such reckless disregard for the status of his account as to amount to willful misrepresentation. Levitsky never contacted his bank to find out his checking account balance during this turbulent period when he was unable to gain access to his mail and review his bank statements. While he was placing orders for parts with Supercom, he also issued other worthless checks of more than $13,000 to other suppliers in exchange for parts. He incurred substantial outstanding business obligations and had to have known that he was in serious financial trouble. The evidence reveals that when the five checks in question were issued in March of 1990, his daily checking account balance varied from a high of $82.78 to a negative balance of $10,432. While Levitsky may not have known exactly what was in his checking account during this period, he testified that he always had a "ball park figure." Making matters even worse, on March 9, 1990, less than one week before he began placing the five orders in question, he withdrew $4,000 from this account. Levitsky never explained why this was done. All of these circumstances cast suspicion upon his underlying motivation and reflect adversely upon his credibility.

By contrast, Madeleine Singson, Supercom's sales representative in charge of the Computers International account, was a very credible witness. She said she contacted Levitsky regarding the worthless checks on at least seven or eight occasions and was told by Levitsky to re-deposit the checks. She did so, and the checks were again returned "NSF." Levitsky disputes this and maintains that, at most, they spoke with each other one or two times. This court believes Ms. Singson.

Levitsky's explanation that he believed his $20,000 certificate of deposit would be applied to his checking account if it became overdrawn is incredible. He knew full well the purpose of this certificate of deposit. He also knew that, until his appeal was resolved, he had no right to its use. Levitsky claims he never received any notice from the bank that his checking account was overdrawn until after all five checks in question were issued, but that point remains in doubt. Levitsky never explained his failure to forward his business mail to either his home or a separate post office box when he was unable to function from a business location. Finally, his declaration that, if he truly intended to defraud Supercom, he would have done so "for a couple million dollars rather than for $12,000" is not reassuring.

During the critical period in March of 1990, Levitsky was playing "fast and loose" with his checking account. He is an intelligent, educated businessman and holds several advanced computer/business degrees. Although he was born in the former Soviet Union, he has been in the United States for over 10 years and is a United States citizen. He is well versed in American business and financial affairs and is not as naive as he would like this court to believe.

This debt is nondischargeable against him pursuant to § 523(a)(2)(A).

■ His wife, Svetlana Levitsky, on the other hand, was never involved in his business. She was fully employed by another company which was unrelated to Computers International. There is no basis to hold her liable under § 523(a)(2)(A). This does not mean that her assets are completely free of Supercom's claims. While a debtor-wife may be entitled to be dismissed from a nondischargeability proceeding, any marital property in which she had an interest can be reached to satisfy that debt which was declared nondischargeable against her husband. *Matter of Grimm*, 82 B.R. 989, 994 (Bankr.W.D.Wis. 1988).

■ Supercom also seeks recovery of interest and attorneys fees and a declaration that they are nondischargeable. Interest is so closely akin to principal that, where the debt is nondischargeable, inter-

**292**

est on the debt is also nondischargeable. Wisconsin law allows pre-judgment interest even when it does not spring from a contractual agreement between the parties and is allowed at the rate of interest fixed by state statute. *Afram Export Corp. v. Metallurgiki Halyps, S.A.,* 772 F.2d 1358, 1371 (7th Cir.1985). Wis.Stats. § 138.04 provides that, where a plaintiff prevails in an action, such plaintiff is entitled to pre-judgment interest from the date the debt was incurred at the legal rate of 5% per annum. *See Estreen v. Bluhm,* 79 Wis.2d 142, 255 N.W.2d 473 (1977). Supercom may also recover post-judgment interest of 4.41%, which is the current coupon issue yield of a 52–week treasury bill settled immediately before judgment, pursuant to 28 U.S.C. § 1961(a).

Non-contractual attorneys' fees, however, are dischargeable.[2] The Bankruptcy Code contains no provision for payment of a prevailing creditor's attorneys' fees. *In re Luce,* 109 B.R. 202, 210 (Bankr.N.D.Tex.1989); *In re Martin,* 761 F.2d 1163, 1168 (6th Cir.1985).

Alexander Levitsky's obligation to Supercom is, therefore, nondischargeable in the sum of $8,784 together with pre-judgment interest on each of the five checks at the rate of 5% from their respective dates of issuance and post-judgment interest at the rate of 4.41%. Supercom is also entitled to recovery of its $120 filing fee. The nondischargeability action against Svetlana Levitsky is dismissed.

This decision shall constitute findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### ORDER

On December 31, 1990, the plaintiff commenced an adversary proceeding against the defendant-debtors, Alexander Levitsky and Svetlana Levitsky, seeking a determination that the obligation due to the plaintiff arising out of five "non-sufficient fund" checks be declared nondischargeable

pursuant to 11 U.S.C. § 523(a)(2)(A). The defendant-debtors filed their answer on February 1, 1991, and the case came on for trial on October 24, 1991.

The court having issued its written decision this date,

IT IS ORDERED:

1. Judgment be entered against the defendant-debtor, Alexander Levitsky d/b/a Computers International, declaring that the obligation due to the plaintiff is nondischargeable pursuant to § 523(a)(2)(A) in the sum of $8,784 together with pre-judgment interest on each of the five checks at the rate of 5% from their respective dates of issuance (pursuant to Wis.Stats. § 138.04), post-petition judgment interest at the rate of 4.41% (pursuant to 28 U.S.C. § 1961[a]) and costs consisting of the $120 adversary filing fee.

2. The complaint against defendant-debtor, Svetlana Levitsky, be and the same is dismissed, with prejudice and without costs.

---

**2.** Where a debt is evidenced by a note or other contract allowing attorneys' fees, such attorneys' fees are nondischargeable. *Klingman v. Levinson,* 831 F.2d 1292, 1296–1297 (7th Cir.1987).