In re William E. HARRIS, Debtor.

CITIBANK (S. DAKOTA), N.A., Plaintiff,

v.

William E. HARRIS, Defendant.

Bankruptcy No. 95 B 20597.
Adversary No. 96 A 00058.

United States Bankruptcy
Court, N.D. Illinois,
Eastern Division.

Dec. 11, 1996.

Michael J. Coleman, Riordan, Larson, Bruckert & Moore, Chicago, IL, for Plaintiff.

Linda Spak, Chicago, IL, for Defendant.

## MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

This proceeding is before the Court after a trial on the dischargeability of a debt William E. Harris (the "Debtor") owes to Citibank, F.S.B. ("Citibank").[1] Citibank has also moved to amend the pleadings to conform to the evidence presented at trial. For the reasons stated herein, the Court hereby grants Citibank's motion to amend the pleadings, and finds that the debt owed to Citibank is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

## FINDINGS OF FACT

On May 5, 1995, the Debtor applied for a $10,000 loan from Citibank. On that date, the Debtor gave financial data to a loan officer at the bank, who then prepared the application. The Debtor represented to Citibank that the purpose of the loan was debt consolidation. The loan application notes

---

1. Citibank filed a motion for summary judgment on the day of the trial. Having ordered that the trial go forward absent a motion for a continuance, the Court, with the Debtor's consent, accepted the motion as Citibank's case in chief. Because the Court is making its decision based on both the motion for summary judgment and on the Debtor's defense as presented at trial and in his post trial motions, the Court hereby denies the motion for summary judgment and treats this judgment as one after a trial on the merits.

that the loan was to "close" three other debts: one to "Household Finance," a second to "Nationwide," and a third to "Sears." Citibank approved the loan for $6,000 and issued a check for that amount payable to the Debtor on May 5, 1995.

The Debtor, however, failed to inform the loan officer of other outstanding debts. The Debtor at that time owed the Central Credit Union of Illinois ("Credit Union") on two loans—one for about $3,500 incurred on December 21, 1994 and a car loan for over $18,000 incurred on May 4, 1995.[2] These two loans were paid with monthly payroll deductions from the Debtor's paycheck, deposited into the Debtor's account at the Central Credit ("Credit Union Account") and then automatically deducted from that account and credited to the loan balance. At all times, the Debtor maintained a $200 balance in the Credit Union Account.

At trial, the Debtor did not deny that he owed these two debts at the time he applied for the Citibank loan and that he failed to tell the loan officer about these loans. Instead, the Debtor testified that the loan officer never asked him whether he owned a car or owed any money toward the purchase of a car. Furthermore, the Debtor testified that he did not disclose the Credit Union Account because he did not consider the Credit Union a "banking institution" and that he did not think it qualified as a checking or savings account as contemplated by the application.

Upon receipt of the loan from Citibank, the Debtor did not completely pay down the three debts specified on the loan application, although the Debtor testified that he used the majority of the Citibank loan to pay prior existing debts. He testified that he paid Nationwide approximately $1,500. The

Debtor also testified that he paid Household Finance approximately $2,000,[3] Sears about $400, and J.C. Penney about $100.[4]

The Debtor made two payments on the loan to Citibank and then defaulted. On October 2, 1995 the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. As of the date of the filing, the Debtor scheduled unsecured, non-priority debts owed to Household Finance, Nationwide, and Sears with balances of $6,000, $2,000, and $2,728.03, respectively. The Debtor did not schedule any unsecured, non-priority claim owed to the Credit Union, although the Debtor subsequently made a statement of intent to keep his automobile and has continued making payments through automatic payroll deductions for the car loan.

Citibank asserts that the Debtor made a false, implied representation that he intended to repay the loan when he, in fact, never so intended. Citibank likewise asserts that the Debtor made a false, implied representation that he intended to use the loan to completely pay off the debts owed to Household Finance, Nationwide, and Sears. Citibank therefore concludes that the debts owed to Citibank are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

In his defense, the Debtor testified that he did, initially, intend to re the Citibank loan and points to the fact that he made two payments on the loan before defaulting. The Debtor further testified that a change in circumstances caused his financial difficulties and led to both his default on the loan and his subsequent bankruptcy filing. He testified that shortly after he received the loan from Citibank, he was demoted from the position of "Team Leader" to "Line Operator" with a salary reduction of just over $2.00

2. The Debtor asserts that the origin date of May 4, 1995 is misleading because an existing loan was merely refinanced on that date.

3. The Debtor's testimony was not clear on this point:

"Q: Can you tell ... how much you paid to Household Finance approximately?"
"A: I don't recall."
"Q: Was it more than a thousand dollars?"
"A: I believe it was."
"Q: Was it more than $2,000?"

"A: It had to be around there somewhere because it was enough to get my—drop my credit down. I paid enough on it to drop my credit down. And then they brought down my interest rates, you know, raised my credit line, so I know it's around somewhere in there." Transcript of Proceedings, October 22, 1996 at 20-21.

4. This testimony somewhat contradicted the Debtor's deposition testimony, which indicated that he paid only $320 to Household Finance and $110 to Sears.

per hour and a reduction in guaranteed overtime. Furthermore, the Debtor testified that he separated from his wife shortly after the loan was made, thereby requiring him to spread his income over two households.[5]

To refute the Debtor's "change in circumstance" defense, Citibank presented to the Court the Debtor's 1994 income tax return and his 1995 W–4 income tax withholding form, which indicate that the Debtor made more money in 1995 than in 1994. Furthermore, Citibank presented evidence, corroborated by testimony of the Debtor, that he did not, in fact, pay off the debts to Household Finance, Nationwide, and Sears.

Citibank alternatively argues that the Debtor intentionally omitted information on his loan application that would have affected Citibank's decision to lend him money. Citibank argues that these omissions, as reflected in the application, constitute written misrepresentations about his financial condition and that the debt owed Citibank is, therefore, non-dischargeable under 11 U.S.C. § 523(a)(2)(B). Citibank has moved to amend the pleadings to conform with the evidence presented at trial, which Citibank asserts proves that the debtor intentionally misrepresented his financial condition and that Citibank reasonably relied on these misrepresentations when it lent the money to the Debtor.

The Debtor has objected to this motion and submits that the omissions were not intentional.

## DISCUSSION

### I. Amendment of the Pleadings

Fed.R.Civ.P. 15(b), made applicable to proceedings under the Bankruptcy Code by Fed. R. Bankr.P. 7015, provides for amendments to pleadings to conform to the evidence presented. Fed R. Civ. P. 15(b) specifically provides that:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

 If a party fails to object to the evidence presented with respect to the claim not pled, the failure to so object demonstrates that the issue was tried by implied consent. *Winger v. Winger*, 82 F.3d 140, 144 (7th Cir.1996); *In re Prescott*, 805 F.2d 719, 725 (7th Cir.1986). "The critical inquiry under Rule 15(b) is whether the opposing party had notice of the issue and consented to its trial." *Anand v. National Republic Bank (In re Anand)*, 1996 WL 596399 (N.D.Ill. Oct.10, 1996) (affirming in part and vacating and remanding in part this Court's decision not to allow amendment of the pleadings). The determinative question is "whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *Rivinius, Inc. v. Cross Manufacturing, Inc. (In re Rivinius, Inc.)*, 977 F.2d 1171, 1175 (7th Cir.1992) (quoting *Prescott*, 805 F.2d at 725).

 In the case at bar, the Debtor had the requisite "fair opportunity to defend" the section 523(a)(2)(B) issues. The Debtor, although he objected to Citibank's motion to amend, testified in defense of the omissions on the financial statement and explained at trial why those omissions occurred. There is no other evidence that he could have presented.

The Debtor will not be prejudiced by the amendment to the pleadings in this case. The Debtor presented evidence that resulted in a defense of a cause of action under section 523(a)(2)(B) and has not, therefore, lost the opportunity to do so if the pleadings are amended. *See Rivinius*, 977 F.2d at 1175. The Debtor had a fair opportunity to defend the omissions and in fact did so in his trial testimony. Furthermore, the Debtor had no-

---

5. Although there was conflicting evidence at trial as to when this separation took place, there was no actual proof of the date the Debtor moved out of his marital home. It was never established whether the Debtor and his spouse separated before or after the Debtor received the loan.

tice that Citibank was presenting the omissions as actionable misrepresentations from Citibank's Motion for Summary Judgment, served on the Debtor's attorney several days before the trial and on which Citibank rested at trial. *See Anand*, 1996 WL 596399 (N.D.Ill. Oct. 10, 1996). Therefore, the Court grants Citibank's motion to amend and will consider a claim under section 523(a)(2)(B) in addition to the claim under section 523(a)(2)(A) included in the complaint.

## II. Dischargeability of the Debt

■ The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Goldberg Securities, Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir.1992); *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 887 (7th Cir.1983). The burden of proof required for establishing an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991); *In re Sheridan*, 57 F.3d 627, 633 (7th Cir.1995). To further the policy of providing the debtor a fresh start in bankruptcy, exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir.1994); *Scarlata*, 979 F.2d at 524.

### A. 11 U.S.C. § 523(a)(2)(A)

■ Section 523(a)(2)(A) provides in relevant part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]

11 U.S.C. § 523(a)(2)(A).

■ In this case, Citibank has failed to show that the Debtor made any false representations, other than statements respecting the Debtor's financial condition. Citibank must show that the Debtor obtained the loan from Citibank through representations the debtor either knew to be false or made with such a reckless disregard for the truth as to constitute a willful misrepresentation. *See First National Bank v. Kimzey (In re Kimzey)*, 761 F.2d 421, 423 (7th Cir.1985). An omission or failure to disclose can constitute a misrepresentation if the omission or failure to disclose creates a false impression that is known by the debtor. *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990, 993 (Bankr. M.D.N.C.1994). However, Citibank's assertions that the Debtor failed to disclose the Credit Union Account and the two loans paid through that Account are not grounds for non-dischargeability under § 523(a)(2)(A) because these are matters "respecting the debtor's . . . financial condition."

■ Furthermore, Citibank has failed to prove that the Debtor's statement that he intended to pay off the loans listed on the loan application was a false statement of his intent at that time. Subsequent acts do not establish that the debtor had the requisite intent at the time the representations were made. *Standard Bank & Trust Co. v. Iaquinta (In re Iaquinta)*, 95 B.R. 576, 578 (Bankr.N.D.Ill.1989). This is because the Debtor may have had the intention to pay the loan and close the three accounts listed on the loan application at the time he took out the loan, but failed to do so due to a change in the Debtor's circumstances. *See Id.*

Thus, Citibank has failed to show the false statements required for relief under section 523(a)(2)(A) of the Bankruptcy Code.

### B. Dischargeability under 11 U.S.C. § 523(a)(2)(B)

■ Section 523(a)(2)(B) provides in relevant part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's ... financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with an intent to deceive[.]

11 U.S.C. § 523(a)(2)(B).

In this case, the Debtor clearly made statements in writing respecting his financial condition that were materially false. The Debtor failed to disclose on the loan application over $20,000 in loans owed to the Credit Union. These loans were issued or reissued to the Debtor within six months to one day prior to the date the Debtor signed the Citibank loan application. Such an omission is considered a materially false statement under section 523(a)(2)(B). *See Selfreliance Federal Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1170–71 (7th Cir.1990) (affirming nondischargeability of debt under section 523(a)(2)(B) where debtor failed to disclose $128,000 mortgage on subsequent secured loan application).

The Debtor's explanation that the loan officer never asked him about an automobile or whether he had financed an automobile is unconvincing and insufficient to relieve him of his obligation to accurately report his financial information on a credit application. The application clearly requests information about other credit extended to the Debtor, including original amount of the loans, unpaid balances, and monthly payments due. The Debtor signed the application with the knowledge that he had failed to include these loans on the application.

Furthermore, Citibank also showed that it reasonably relied on those statement when it issued the loan to the Debtor. The Debtor applied for a $10,000 loan, which Citibank approved for only $6,000. Based on the information disclosed by the Debtor, Citibank did not believe the Debtor was a sound enough credit risk to receive a $10,000 loan. It is likely, if not certain, that if the Debtor had revealed that it owed an additional $20,000 in loans on the date of the application that Citibank would not have thought the Debtor a sound credit risk to lend him any money, let alone $6,000.

Finally, the evidence submitted in relation to the omissions indicate, by a preponderance of the evidence, that the Debtor made these statements with an intent to deceive Citibank. The Court may find an intent to deceive if the evidence presented indicates, either directly or through logical inference, that the Debtor knew or should have known that the representation or omission would induce Citibank to extend credit. *See Sheridan*, 57 F.3d at 633; *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 961 (Bankr.N.D.Ill.1995). Citibank may show an intent to deceive by demonstrating that the Debtor had a reckless indifference to or reckless disregard for the accuracy of the information on the financial statement. *Westbank v. Grossman (In re Grossman)*, 174 B.R. 972, 984 (Bankr.N.D.Ill.1994); *Bryson*, 187 B.R. at 961. That showing has been made here. Such a reckless indifference and disregard is the most generous explanation of the Debtor's failure to disclose such recent and clearly material transactions from his loan application.

### CONCLUSION

For the reasons stated herein, Citibank's Motion to Amend the Pleadings is granted. The pleadings are hereby amended to conform to the evidence presented at trial and to state a claim under 11 U.S.C. § 523(a)(2)(B) and the debt the Debtor owes to Citibank is non-dischargeable under section 523(a)(2)(B).