In re Leah D. TREVISAN, Debtor.

Mega Marts, Inc., Plaintiff,

v.

Leah D. Trevisan, Defendant,

Roundy's Inc., Plaintiff,

v.

Leah D. Trevisan, Defendant.

Bankruptcy No. 02–32158.
Adversary Nos. 03–2210, 03–2211.

United States Bankruptcy Court,
E.D. Wisconsin.

Oct. 14, 2003.

Credit Solutions, S.C., pro se, Leah Trevisan, pro se, Milwaukee, WI, for Debtor/Defendant Leah D. Trevisan.

Randy J. Wynn, Milwaukee, WI, for Plaintiffs Mega Marts, Inc., Roundy's, Inc.

## MEMORANDUM OPINION DENYING MOTIONS FOR DEFAULT JUDGMENT

SUSAN V. KELLEY, Bankruptcy Judge.

Plaintiffs Mega Marts, Inc. and Roundy's Inc. filed these virtually identical adversary proceedings claiming that debts owed to them by the debtor Leah D. Trevisan are non-dischargeable under § 532(a)(2)(A) of the Bankruptcy Code.[1] The Debtor did not answer or otherwise respond to the complaints, and the Plaintiffs filed a Motion for default judgment. A prove-up hearing was held on August 20, 2003, at which Plaintiffs' counsel appeared. Neither the Debtor nor Debtor's counsel appeared.

The issue is whether the Plaintiffs have met their burden in proving that the Debtor's debt was for money or property obtained by false pretenses, false representation or actual fraud within the provisions of Bankruptcy Code § 532(a)(2)(A). The Court finds that Plaintiffs did not meet their burden of proof, and denies the Motion for default judgment.

## FACTS

Attached to the Complaint are documents establishing that on two or three days in late November 1996, the Debtor presented four checks to two Pick 'n Save grocery stores:

| Check number | Amount |
| --- | --- |
| 319 | $52.31 |
| 320 | 14.30 |
| 322 | 29.39 |
| 323 | 25.02 |

The checks were not honored by the Debtor's bank, and by notarized letters dated December 10, 1996 (from "Mega Marts d/b/a Pick 'N Save Mega Food Center" as to check 322) and December 12, 1996 (from "Pick 'n Save" as to the other three checks) the Plaintiffs notified the Debtor that her checks were dishonored. A "collection fee" of $20 was added by Mega Marts, and "handling/bank charges" of $20 per check were added by Pick 'n Save. Thus the Debtor's obligations to the Plaintiffs for $121.02 in checks now totaled $201.02. The letters threatened that if the Debtor failed to pay the amount of the checks plus the other charges within 30 days, further action would be taken under the provisions of § 943.245 of the Wisconsin Statutes.

On January 29, 1997, Roundy's, Inc. d/b/a Pick 'N Save filed a small claims complaint against the Debtor in the Circuit Court for Milwaukee County. In addition to the $151.63 representing the checks and bank/handling charges, the Complaint sought triple damages under Wis. Stat. § 943.245(2)(c) in the amount of $454.89, and attorneys fees under Wis. Stat. § 943.245(2)(d) in the amount of $202.15. The total sought in the small claims action was $808.67 plus costs and disbursements.

---

1. Identical complaints, motions, stipulations and other pleadings were filed in each case. For ease of reference, these pleadings will be referred to collectively, except when there is a relevant difference between them.

The Circuit Court for Milwaukee County entered a judgment by default against the Debtor on February 20, 1997 in the amount of $883.67.

On March 12, 1997, Mega Marts, Inc. filed a small claims complaint against the Debtor in the Circuit Court for Milwaukee County seeking the unpaid amount of check 322, bank/handling charges, triple damages and attorneys fees totaling $263.41 plus costs and disbursements. This Complaint led to entry of a default judgment by the Circuit Court for Milwaukee County on April 17, 1997 in the amount of $383.41.

Plaintiffs did not submit copies of the Circuit Court judgments nor the dockets from the small claims cases. A search of the electronic docket for the Circuit Court for Milwaukee County revealed the dates of the complaints and the judgments by default. In the Mega Marts case, according to the electronic docket, the judgment was entered against "Leah D. Treyisan" not "Leah D. Trevisan."

At the prove-up hearing, Plaintiffs submitted copies of body attachments issued April 17, 1997 and September 17, 1998 in the Roundy's, Inc. case. The body attachments directed the Sheriff to attach the body of the Debtor and bring her before the Circuit Court for Milwaukee County to show cause why she should not be held in contempt for failure to respond to a previously issued Order to disclose assets. No evidence or testimony was presented about whether the body attachments were successfully executed, or whether Plaintiffs obtained any information as a result of their issuance.

On September 3, 2002, the Debtor filed a Chapter 7 bankruptcy petition in this court. She was represented by a local law firm, Credit Solutions, S.C. The Debtor's Schedules list a total of $14,457.50 in unsecured debt.[2] The Schedules contain a listing for the Plaintiffs' counsel, but it is not apparent from the face of the Schedules that any other creditors' claims arose from NSF checks. Almost half of the debt is for student loans. Another category is for traffic fines incurred in 1999. Additionally, she listed several medical bills. Her Schedules indicate that she is not married, and as of September 2002, had dependents aged two and four. She had been employed as a manager of Petromart for two months, and was living with family, although she planned to "move out on her own as soon as she is able."

The Debtor appeared for her § 341 meeting of creditors on October 30, 2002, but the Plaintiffs did not attend the meeting. After questioning the Debtor and examining her Bankruptcy Schedules, the Chapter 7 Trustee filed a report declaring hers a "no asset" bankruptcy case.[3]

On October 29, 2002, the Debtor's attorney (but not the Debtor) signed a Stipulation Extending Time to File a Complaint to Determine Dischargeability of Certain Types of Debts. The Plaintiffs' attorney signed the Stipulation on November 6, 2002, and the Court approved the Stipulation by Order entered on November 8, 2002. The Stipulation and Order extended the deadline for the Plaintiffs to file a complaint to determine the dischargeability of debt from the original deadline of December 29, 2002 to April 29, 2003.

■ On April 23, 2003, the Plaintiffs filed the nondischargeability complaints that instituted these adversary proceed-

---

2. The Plaintiffs asked the Court to consider the Debtor's Bankruptcy Schedules as evidence of her intent.

3. The report indicates that there are no nonexempt assets to be administered for the benefit of the Debtor's unsecured creditors.

ings. The Roundy's complaint seeks a judgment in the amount of $1,872.37 and the Mega Marts complaint seeks a judgment for $885.15.[4] On May 7, 2003, the complaints were served by first class mail on the Debtor and her counsel, Credit Solutions, S.C. On May 12, 2003, Credit Solutions, S.C. filed a Motion to withdraw as attorney for the Debtor. Among other allegations of the withdrawal motion was the following: "He has written the client advising him [sic] of his intention to withdraw, and has had no response." The Court entered an Order allowing the withdrawal of Credit Solutions as counsel for the Debtor on June 16, 2003. No new attorney has appeared to represent the Debtor.

In Paragraph 4 of their adversary complaint in this court, the Plaintiffs "attached and incorporated by reference" the small claims complaints filed in the Circuit Court for Milwaukee County and recited the date and amount that the State court entered the judgments on the small claims complaints. Paragraph 5 of the complaints state: "The Defendant obtained the items referred to in paragraph 4 by false, fraudulent pretenses in that the Defendant never intended to pay the Plaintiff for said items, contrary to 11 U.S.C. § 523(a)(2)(A)."

The gist of the nondischargeability complaint is that since she paid with checks that were dishonored, ignored a collection notice and allowed a default judgment to be taken for more than three times the amount of the checks, the Debtor did not intend to pay for the groceries she purchased. At the prove-up hearing, Plaintiffs added that the Debtor's conduct met the definition of fraud in the Wisconsin NSF check statute, the Debtor had made no effort to repay the amount of the checks in some six years, and the Debtor caused the small claims court to issue two body attachments by her failure to disclose assets. Together with documentary evidence, consisting of the small claims complaints, which include copies of the NSF checks and the notarized demand letters, the body attachments and the Debtor's bankruptcy schedules, Plaintiffs contend that these facts and circumstances constitute a *prima facie* case of nondischargeable fraud under Bankruptcy Code § 523(a)(2)(A).

## DISCUSSION

Two issues must be addressed before reaching the ultimate decision of this case: whether the Debtor's default on the nondischargeability complaint entitles the Plaintiffs to a judgment on the merits; and whether the state court small claims judgments must be given preclusive effect by this court.

1. **Plaintiffs must prove a *prima facie* case for nondischargeability to succeed on their Motions for Default Judgment.**

The Debtor's default does not automatically entitle the Plaintiffs to entry of a default judgment. Federal Rule of Bankruptcy Procedure 7055(b)(2) governing the granting of default judgments provides the court with broad discretion to conduct such hearings and receive evidence that it deems proper before entering a default judgment. *In re Sziel,* 206 B.R. 490, 492

---

4. Thanks to the treble damages, interest and costs, the Debtor's liability for the NSF checks, which originally totaled $121.02, has now reached $2,757.52. If the underlying debt is determined nondischargeable, the entire amount, including interest and damages,

is not discharged. *Cohen v. de la Cruz,* 523 U.S. 213, 215, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998); *see In re Hagen,* 256 B.R. 784, 786 (Bankr.E.D.Wis.2000) (nondischargeable amount includes the state court treble damage award).

(Bankr.N.D.Ill.1997). *Accord Mercantile Bank v. Canovas*, 237 B.R. 423, 427 (Bankr.N.D.Ill.1998) (court will enter default judgment only if the evidence submitted establishes a *prima facie* case).

In *Sziel*, the plaintiff filed a § 523(a)(2)(A) complaint alleging that the debtor committed fraud in the use of a credit card shortly before filing bankruptcy. 206 B.R. at 491. The debtor defaulted, and the plaintiff moved for default judgment. Again, the debtor did not respond. The bankruptcy court required the plaintiff to substantiate its case for nondischargeability, and the plaintiff served interrogatories and requests for admissions on the debtor. The debtor still did not answer, and the plaintiff asked the court to find that the matters alleged were deemed admitted. *Id.*

However, neither the complaint nor the requests for admissions contained specific facts supporting the conclusion that the debtor had committed fraud. The court therefore refused to find that the debtor was deemed to have admitted the conclusory allegations of the complaint and requests for admissions. Rather than inferring the debtor's guilt, the court noted that many consumer debtors are in such a precarious financial condition when they file bankruptcy that they cannot afford to pay additional fees to defend a lawsuit.

Moreover, the court pointed out that the creditor-plaintiffs have many investigative tools at their disposal, none of which had been used to develop evidence in the *Sziel* case. The plaintiff had not attended the § 341 meeting of creditors, conducted a Rule 2004 examination of the debtor or subpoenaed the debtor to attend the prove-up hearing. The court concluded:

> Entry of a default judgment is discretionary with the trial court and may be denied where there are insufficient facts to support the claim. Under the circumstances currently existing in the consumer debt arena it is incumbent upon the bankruptcy courts to ensure that the 'fresh start' policy is not being violated by entry of default judgments and 'agreed' orders in baseless nondischargeability actions. In order to avoid that result, this Court will require evidence of some facts tending to support the plaintiff's allegations of fraud before it will enter a default judgment or agreed order settling an action. The creditor has a number of methods for establishing the validity of its claim, including presenting transcripts of § 341 meetings or Rule 2004 examinations or other documentary evidence establishing the 'badges of fraud.' In some instances it may be necessary to hold a hearing with the debtor brought before the court under a subpoena power.

*Sziel*, 206 B.R. at 495.

This court agrees with the analysis and result in *Sziel*. The complaint here similarly lacks detail and specifics. The form complaint incorporates the allegations of the small claims complaints, which are themselves boilerplate forms that do not mention the words "fraud" or "misrepresentation". The nondischargeability complaint then concludes that the Debtor obtained her groceries by false, fraudulent pretenses in that she never intended to pay for her groceries. Plaintiffs did not attend the § 341 meeting or subpoena the Debtor to appear for a deposition or at the prove-up hearing to testify about her financial circumstances or knowledge of her bank balance when she wrote the $100 in checks to the Plaintiffs. The Debtor's counsel withdrew from representation as soon as the nondischargeability complaint was filed, submitting a form motion. When given the opportunity to present additional evidence to the Court in support of the Motion for default judgment, the

Plaintiffs submitted the two body attachments and asked the Court to consider the Debtor's Bankruptcy Schedules. As addressed above, the Schedules do not indicate that the Debtor was liable for any NSF checks other than those presented to the Plaintiffs, and the body attachments merely show that the Debtor ignored a form order to disclose assets issued in connection with the small claims judgments.

It is entirely possible that the Debtor is simply a bad bookkeeper causing the checks to be dishonored. Or, perhaps after she wrote the checks, a medical or family emergency required that she use the funds in her bank account for another purpose. When she wrote the checks, she could have been expecting a loan or cash influx that never came. It is also possible that the Debtor knew full well that she did not have any money in her account, had no reasonable prospects of obtaining any money to cover the checks and wrote the checks to the grocery stores to obtain credit fraudulently. None of these possibilities has been developed by the Plaintiffs here, presumably because it is easier and more economical to rely on the Debtor's default to establish their case.

 However, especially in § 523 cases, bankruptcy courts should exercise their discretion to require that plaintiffs prove a *prima facie* case. *In re Liu*, 282 B.R. 904, 907 (Bankr.C.D.Cal.2002). "This practice is motivated by the risk that a creditor may obtain a default judgment, regardless of the merits of the complaint, against an honest debtor who is in such a precarious financial condition that the debtor cannot

afford to defend a non-dischargeability claim." *Id.* at 908.

Accordingly, unless the judgments entered by the state court are given preclusive effect or the allegations raised in the Complaint and the documents attached to the Complaint and submitted at the prove-up hearing provide a *prima facie* case for fraud, the Motion for default judgment should be denied.

**2. The small claims judgments are not entitled to preclusive effect, since the cases in the state court were not "actually litigated."**

 Generally, bankruptcy courts independently determine whether particular debts should be excepted from discharge under § 523(a)(2). *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir.1994). However, in certain situations, the doctrine of issue preclusion (formerly called collateral estoppel) will apply to a discharge or nondischargeability action. *Id.* See also *Klingman v. Levinson*, 831 F.2d 1292, 1294–95 (7th Cir.1987). Thus:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*In re Conway*, 148 B.R. 881, 883 (Bankr. E.D.Wis.1992), citing Restatement (Second) of Judgments § 27 (1980). *Accord In re Dempster*, 182 B.R. 790, 799 (Bankr. N.D.Ill.1995).

 Except in very limited circumstances not present here,[5] default judgments are not given preclusive effect be-

---

**5.** For cases holding that a full trial is not always necessary to satisfy the "actually litigated" requirement, see *In re Bruetman*, 259 B.R. 649, 663 (Bankr.N.D.Ill.2001). These are not the typical default judgments in which

defendants neglected or elected not to participate in the litigation. Rather, they were cases in which defendants participated, but then frustrated efforts to bring the actions to trial.

cause of the requirement that the relevant issues be actually litigated. *Meyer*, 36 F.3d at 1379. Therefore, the small claims court default judgments entered by the Circuit Court for Milwaukee County have no preclusive effect on this court, and this court must make its own determination as to the dischargeability of the debts in question.[6]

### 3. The Plaintiffs have not presented a *prima facie* case of fraud under Section 523(a)(2)(A).

▮ Bankruptcy Code § 523(a)(2)(A) provides in pertinent part:

(a) A discharge ... does not discharge an individual debtor from any debt ... (2) for money, property, services ... to the extent obtained by... (A) false pretenses, a false representation, or actual fraud ...

In order for the Plaintiffs to prevail under this section, they must prove that:

1) The debtor obtained property through representations which the debtor either knew to be false or were made with such reckless disregard for the truth as to constitute willful misrepresentation;

2) The debtor possessed an intent to deceive; and

3) The creditor actually relied upon the false representation and that its reliance was reasonable.

*In re Levitsky*, 137 B.R. 288, 290 (Bankr. E.D.Wis.1992), citing *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985). The plaintiff must establish the elements in a nondischargeability action by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755

(1991). Moreover, the creditor must prove "positive fraud, not merely fraud implied by law." *In re Anderson*, 10 B.R. 296, 297 (Bankr.W.D.Wis.1981).

### A. Plaintiffs have failed to prove that Debtor made any "representation" as required by § 523(a)(2)(A).

▮ A check is not a representation of any kind. *Williams v. U.S.*, 458 U.S. 279, 285–86, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982); *In re Scarlata*, 979 F.2d 521, 525 (7th Cir.1992); *U.S. v. Doherty*, 969 F.2d 425, 427 (7th Cir.1992). A check is simply the maker's instruction to the bank to pay the face amount of the check to the bearer, and a promise on the part of the maker to pay the check in the event that it is dishonored by the bank. *Williams*, 458 U.S. at 285, 102 S.Ct. 3088. The Plaintiffs have attempted to distinguish *Scarlata*, noting that Scarlata covered his NSF check the very next day. However, relying on *Williams*, the Seventh Circuit Court of Appeals clearly held that the presentation of the check itself was not a representation: "Although *Williams* involved a criminal statute and construed the word 'statement', its reasoning governs whether Scarlata's check was a false pretense in this civil bankruptcy case." *Scarlata*, 979 F.2d at 525. Under *Williams* and *Scarlata*, it does not matter whether the check was honored the next day, the next year or not at all. Presentation of an NSF check alone simply does not constitute nondischargeable false representation, false pretenses or fraud under § 523(a)(2)(A).

▮ Many bankruptcy courts since *Williams* have so held. "The fact that a debtor knowingly issues an NSF check

---

**6.** Assuming issue preclusion did apply, the party asserting the doctrine would have the burden of proving the necessary elements and submitting to the court a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action. *In re Eisenberg*, 189 B.R. 725, 729 (Bankr. E.D.Wis.1995).

does not establish a misrepresentation." *In re Pokrandt*, 54 B.R. 691, 692 (Bankr. W.D.Wis.1985). Thus, in an NSF check case, the plaintiff must prove that the debtor made an express representation that the check was good, other than the issued check itself. *In re Hunter*, 83 B.R. 803, 804 (M.D.Fla.1988); *In re Horwitz*, 100 B.R. 395, 399–400 (Bankr.N.D.Ill.1989) ("Debtor's issuance of checks to Plaintiff, without more, does not constitute a false representation within the meaning of the Bankruptcy Code § 523(a)(2)(A).")

Here, Plaintiffs have not offered any evidence of a misrepresentation made by the Debtor at the time the checks were presented, other than the issuance of the NSF checks themselves. The demand letters, default judgments, body attachments and Bankruptcy Schedules do not provide the requisite evidence of a misrepresentation by the Debtor. The Plaintiffs did not submit an affidavit from anyone at the Plaintiffs about any representation made by the Debtor. Therefore, the court finds that the Plaintiffs failed to prove Debtor made a representation as required by Bankruptcy Code § 523(a)(2)(A).

B. *Plaintiffs have not adequately demonstrated that Debtor had the requisite intent to defraud the Plaintiffs at the time of the issuance of the NSF checks.*

Even if proof of an actual misrepresentation is not necessary to find a debt nondischargeable, fraudulent intent on the debtor's part must be shown in order to establish the requisite fraud under § 523(a). *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir.2000). Since fraudulent intent rarely can be proven directly, "[i]t must be inferred from the surrounding circumstances." *In re Levitsky*, 137 B.R. at 290. If there is room for an inference of honest intent, the issue of

intent must be resolved in favor of the debtor. *Rembert v. Citibank South Dakota, N.A.*, 219 B.R. 763, 767 (E.D.Mich. 1996), *aff'd*, 141 F.3d 277 (6th Cir.1998), *cert. denied*, 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998).

Proof of intent for purposes of § 523(a)(2)(A) must be measured by a debtor's subjective intention at the time of the transaction in which the debtor obtained the money, property or services. *In re Iaquinta*, 95 B.R. 576, 578 (Bankr. N.D.Ill.1989). Therefore, subsequent acts of fraud or omission do not establish that the debtor had the requisite intent at the time the representations were made. *Citibank (S.D.) v. Harris (In re Harris)*, 203 B.R. 117, 121 (Bankr.N.D.Ill.1996). This is because the debtor may have had the appropriate intention at the time of the transaction, but failed to act because of a change in the debtor's circumstances. *Id.*

Accordingly, the Debtor's default on the small claims actions and failure to respond to the Order to disclose assets, resulting in the issuance of body attachments, cannot be used to prove the Debtor's fraudulent intent at the time she presented the checks to the Plaintiffs. The only evidence of the Debtor's fraudulent intent at the time the checks were presented are the checks themselves. Since the Plaintiffs did not attend the meeting of creditors or subpoena the Debtor to elicit information about the circumstances surrounding the issuance of the checks, there is inadequate proof of the Debtor's fraudulent intent. As stated earlier, the circumstances surrounding these checks could be innocent or fraudulent; without more evidence to show that the Debtor intended to deceive the Plaintiffs, the inferences must be drawn in favor of the Debtor's discharge.

### C. The Debtor's violation of the Wisconsin NSF statute does not conclusively demonstrate the Debtor's fraud.

Plaintiffs also have argued that the Debtor's violation of Wis. Stats. §§ 943.24 and 943.245 establishes the *prima facie* evidence of Debtor's fraudulent intent. Section 943.24 provides criminal liability for issuance of a check without intent to pay. Section 943.24(3) states:

Any of the following is prima facie evidence that the person at the time he or she issued the check ... intended it should not be paid ...

(b) Proof that, at the time of issuance, the person did not have sufficient funds or credit with the drawee and that the person failed within 5 days after receiving notice of nonpayment or dishonor to pay the check or other order.

Section 943.245 says that anyone who suffers a loss by virtue of the violation of § 943.24, i.e., the recipient of the NSF check, may recover damages if the maker "knew, should have known or recklessly disregarded the fact that the check or order was drawn on an account that did not exist, was drawn on an account with insufficient funds or was otherwise worthless." Wis. Stat. § 943.245.

Although the Plaintiffs alleged that the Debtor violated these statutes and obtained default judgments from the Circuit Court for Milwaukee County, proving fraud to except a debt from a bankruptcy discharge requires more. Fraud, in the context of § 523(a)(2)(A), means "positive fraud involving moral turpitude." *In re*

Blatz, 37 B.R. 401, 404 (Bankr.E.D.Wis. 1984).

Fraudulent intent cannot be established solely by proof that the debtor violated the Wisconsin NSF check statute. Addressing Wis. Stat. § 943.24 in *In re Anderson*, Bankruptcy Judge Martin stated: "Colliers supports the view of [Western District of Wisconsin Bankruptcy] Judge Bessman arguing that § 523(a)(2)(A) requires a finding of ***actual fraud other than a statutorily created fraud*** in order to have the moral turpitude required to bar discharge." 10 B.R. 296, 298 (Bankr. W.D.Wis.1981) (emphasis supplied).[7] *See also Check Control v. Anderson (In re Anderson)*, 181 B.R. 943, 948 (Bankr. D.Minn.1995) ("[F]raud imputed by a statutory provision—such as Minn.Stat. § 609.535—is not sufficient to establish nondischargeability.")

The small claims court default judgments that the Debtor violated the Wisconsin NSF Statutes do not constitute *prima facie* proof of the Debtor's fraudulent intent. The only relevant evidence provided by the Plaintiffs are the four checks themselves, totaling approximately $100. At some point, the judgments and checks themselves may be sufficient to make a prima facie case. For example, in *Check Control, supra,* the debtor presented some 59 checks knowing that he did not have sufficient funds to cover them. However, in this case, without some supporting testimony or other evidence about the Debtor's circumstances at the time she presented the four checks to demonstrate that she knew that the checks would not be honored or that she otherwise intended to obtain groceries without paying for them,

---

**7.** To the extent Judge Martin held in *Anderson* that the presentation of a check constituted an implied representation that the check would be honored, this Court respectfully disagrees. *Anderson* was decided prior to the Supreme Court's *Williams* decision and the Seventh Circuit's *Scarlata* case, that a check is not a representation at all, but merely an instruction to the drawee bank.

the Plaintiffs cannot sustain their burden of proof under § 523(a)(2)(A).

 The court is not unsympathetic to the Plaintiffs' plight as clearly these grocery stores did not intend to sell groceries on credit to the Debtor. However, the court is equally cognizant of the policy consideration of providing a debtor a fresh start in bankruptcy, whereby exceptions to discharge are "construed strictly against a creditor and liberally in favor of a debtor." *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985). In order to have their claims against the Debtor survive the bankruptcy discharge, the Plaintiffs must do more than show a default judgment under the state statute and copies of the checks. If the Plaintiffs are unwilling or unable to undertake this additional responsibility due to economics or other reasons, then the Debtor's debts to the Plaintiffs should and will be discharged.

## CONCLUSION

Since the Plaintiffs have failed to prove a *prima facie* case under Bankruptcy Code § 523(a)(2)(A), the default on the nondischargeability complaint does not mandate the entry of a default judgment, and the doctrine of issue preclusion does not apply, the Plaintiffs' Motion for Default Judgment must be denied. Plaintiffs shall advise the court within 30 days whether they will pursue these actions with the presentation of additional testimony and evidence. Another prove-up hearing will be scheduled should the Plaintiffs wish to present evidence and testimony. If Plaintiffs do not present additional evidence, in accordance with the foregoing opinion, these adversary proceedings will be dismissed.