In re Marie H. BARSAMIAN, f/k/a/ Marie H. Kunde, Debtor.

McAdams, Inc., et al., Plaintiffs,

v.

Marie H. Barsamian, Defendant.

Bankruptcy No. 02–18048.
Adversary Nos. 03–00053
through 03–00058.

United States Bankruptcy Court,
W.D. Wisconsin.

Nov. 3, 2004.

Randy J. Wynn, Wynn Law Office, Milwaukee, WI, for Plaintiff.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

The defendant, Marie Helen Barsamian filed a Chapter 7 petition on December 12, 2002. On March 14, 2003, the plaintiffs (McAdams, Inc.; Roundy's, Inc.; Mega Marts, Inc.; Kohl's Food Stores, Inc.; Doll Foods, Inc.; and Albrecht's Foods, Inc., Wisconsin businesses, all represented by Attorney Randy J. Wynn) filed complaints under 11 U.S.C. § 523(a)(2)(A).

At pretrial on May 13, 2003, the adversary proceeding was dismissed for want of

prosecution. On May 22, 2003, Attorney Wynn filed a Motion to Vacate Dismissal of Adversary Proceeding, and asked that the adversary proceeding be reopened to pursue a Motion for Default Judgment. Attorney Wynn relies on an affidavit that states, "due to an error on my part, I accidentally scheduled the date for the pretrial in my calendar for June 13, 2003, as opposed to May 13, 2003." On June 12, 2003, the defendant/debtor objected to the plaintiffs' Motion to Vacate Dismissal.

■ Should this adversary proceeding be reopened? In some circumstances, an attorney's error, if excusable, may provide a basis for relieving a party of the cost of that error. In *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the court held:

> Hence, by empowering the courts to accept late filings "where the failure to act was the result of excusable neglect," Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

And further held,

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395, 113 S.Ct. 1489. *See also In re Byrne*, 162 B.R. 816 (Bankr.W.D.Wis. 1993), and *Robb v. Norfolk & Western Ry. Co.*, 122 F.3d 354, 361–62 (7th Cir.1997) ("Building upon our decisions *Bulic* and *Singson, supra*, which clearly acknowledged *Pioneer's* broader reading of 'excusable neglect,' we wish to clarify that there is not a 'hard and fast' rule in this circuit which bars a trial judge from exercising discretion to determine whether attorney negligence in missing a filing deadline may be deemed 'excusable neglect.' [B]y following *Pioneer* in a clear and straightforward fashion, we join the other circuits that acknowledge 'excusable neglect' has a new and broader meaning in the aftermath of the Supreme Court's 1993 decision." *See United States v. Thompson*, 82 F.3d 700, 702 (6th Cir.1996) (*Pioneer* "provides us with a more liberal definition of what constitutes excusable neglect...."); *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir.1996); *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 849–50 (11th Cir.1996); *Chemetron Corp. v. Jones*, 72 F.3d 341, 349 (3rd Cir.1995); *Fink v. Union Cent. Life Ins. Co.*, 65 F.3d 722, 724 (8th Cir.1995) ("[T]he Supreme Court recently established a more flexible analysis of the excusable neglect standard in *Pioneer*...."); *Reynolds v. Wagner*, 55 F.3d 1426, 1429 (9th Cir. 1995) ("[T]he Supreme Court appears to have just changed the rules. *See Pioneer*...."); *Virella–Nieves v. Briggs & Stratton Corp.*, 53 F.3d 451, 454 (1st Cir. 1995); *United States v. Clark*, 51 F.3d 42, 43–44 (5th Cir.1995); *City of Chanute, Kansas v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1045 (10th Cir.1994); *United States v. Hooper*, 9 F.3d 257, 258 (2nd Cir.1993) (noting "more lenient interpretation" of excusable neglect in *Pioneer*); *Information Sys. and Networks Corp.*, 994 F.2d 792, 796 (Fed.Cir.1993).)

Fed.R.Civ.P. 60(b) states in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect.

Bankruptcy Rule 9024 states in relevant part:

Rule 60 F.R.Civ.P. applies in cases under the Code except that... (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code.

Based on the expanding use of the "excusable neglect" doctrine, granting the Motion to Vacate Dismissal of Adversary Proceeding is appropriate in this case.

■ With the adversary proceeding reopened, should the plaintiffs' Motion for Default Judgment be granted? The answer is no.

The leading case on the issue of whether bad checks equal false representations is *Williams v. U.S.*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982). In *Williams*, the Court said:

Although petitioner deposited several checks that were not supported by sufficient funds, that course of conduct did not involve the making of a 'false statement,' for a simple reason: technically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.'

*Williams*, 458 U.S. at 284, 102 S.Ct. 3088.

The Court went on to say;

"In any event, whatever the general understanding of a check's function, 'false statement' is not a term that, in common usage, is often applied to characterize "bad checks."

*Id.* at 286, 102 S.Ct. 3088.

*In re Trevisan*, 300 B.R. 708, 713 (Bankr.E.D.Wis.2003) held:

The Debtor's default does not automatically entitle the Plaintiffs to entry of a default judgment. Federal Rule of Bankruptcy Procedure 7055(b)(2) governing the granting of default judgments provides the court with broad discretion to conduct such hearings and receive evidence that it deems proper before entering a default judgment.

This was because:

[N]either the complaint nor the requests for admissions contained specific facts supporting the conclusion that the debtor had committed fraud. The court therefore refused to find that the debtor was deemed to have admitted the conclusory allegations of the complaint and requests for admissions. Rather than inferring the debtor's guilt, the court noted that many consumer debtors are in such a precarious financial condition when they file bankruptcy that they cannot afford to pay additional fees to defend a lawsuit.

*Id.* at 714.

The *Trevisan* Court further elaborated: It is entirely possible that the Debtor is simply a bad bookkeeper causing the checks to be dishonored. Or, perhaps after she wrote the checks, a medical or family emergency required that she use the funds in her bank account for another purpose. When she wrote the checks, she could have been expecting a loan or cash influx that never came. It is also possible that the Debtor knew full well that she did not have any money in her account, had no reasonable prospects of obtaining any money to cover the checks and wrote the checks to the

grocery stores to obtain credit fraudulently. None of these possibilities has been developed by the Plaintiffs here, presumably because it is easier and more economical to rely on the Debtor's default to establish their case.

*Id.* at 715.

The burden of proof is:

Thus, in an NSF check case, the plaintiff must prove that the debtor made an express representation that the check was good, other than the issued check itself.

*Id.* at 717.

Subsequent to the plaintiffs' Motion for Default Judgment, Judge Kelley had occasion to rule again on this issue. In *In re Childers*, 311 B.R. 232, 236 (Bankr. E.D.Wis.2004) held:

In deciding, the court must bear in mind that to further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *In re Scarlata*, 979 F.2d 521, 524 (7th Cir. 1992).

*Childers* further held:

*Trevisan* established that presentation of NSF checks alone does not rise to the level of false representation required to except a debt from discharge, since, under Supreme Court and Seventh Circuit Court of Appeals precedent, presentation of a check is neither an express nor implied representation that the check is good. *Williams v. U.S.*, 458 U.S. 279, 285–86, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982); *In re Scarlata*, 979 F.2d 521, 525 (7th Cir.1992); *U.S. v. Doherty*, 969 F.2d 425, 427 (7th Cir.1992). As stated in *In re Pokrandt*, "The fact that a debtor knowingly issues an NSF check does not

establish a misrepresentation." 54 B.R. 691, 692 (Bankr.W.D.Wis.1985).

*Childers*, 311 B.R. at 236.

In *Matter of Scarlata*, 979 F.2d 521, 525 (7th Cir.1992), citing *Williams*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767, the Seventh Circuit Court of Appeals has ruled on the notion that a check is not a representation of any kind. The plaintiffs attempt to distinguish *Barsamian* from *Scarlata*.

In *Scarlata*, the debtor wrote a check for which there were no assets at the time it was written. But the debtor deposited cash into the account the next day, and the check did not bounce. That notwithstanding, *Williams* and *Scarlata* clearly indicate that *presentation* of a bad check does not constitute false pretenses, a false representation, or actual fraud.

To support their argument, the plaintiffs rely on Wis. Stat. § 943.24 for support of their proposition that writing an NSF check is fraud. Wis. Stat. § 943.24 states:

(1) Whoever issues any check or other order for the payment of not more than $2,500 which, at the time of issuance, he or she intends shall not be paid is guilty of a Class A misdemeanor.

(2) Whoever issues any single check or other order for the payment of more than $2,500 or whoever within a 90–day period issues more than one check or other order amounting in the aggregate to more than $2,500 which, at the time of issuance, the person intends shall not be paid is guilty of a Class I felony.

(3) Any of the following is prima facie evidence that the person at the time he or she issued the check or other order for the payment of money, intended it should not be paid:

(a) Proof that, at the time of issuance, the person did not have an account with the drawee; or

(b) Proof that, at the time of issuance, the person did not have sufficient

funds or credit with the drawee and that the person failed within 5 days after receiving written notice of nonpayment or dishonor to pay the check or other order, delivered by regular mail to either the person's last-known address or the address provided on the check or other order; or

(c) Proof that, when presentment was made within a reasonable time, the person did not have sufficient funds or credit with the drawee and the person failed within 5 days after receiving written notice of nonpayment or dishonor to pay the check or other order, delivered by regular mail to either the person's last-known address or the address provided on the check or other order.

Plaintiffs have only demonstrated that the defendant/debtor could possibly be prosecuted by the State of Wisconsin. The Supreme Court has set a different standard for nondischargeability under 11 U.S.C. § 523(a)(2)(A).

The plaintiffs attempt to derive support for their position from Wis. Stat. § 943.21, which states in relevant part:

(1m) Whoever does any of the following may be penalized as provided in sub. (3):

(a) Having obtained any beverage, food, lodging, ticket or other means of admission, or other service or accommodation at any campground, hotel, motel, boarding or lodging house, restaurant, or recreational attraction, intentionally absconds without paying for it.

Grocery stores are not listed. We may assume that the Wisconsin legislature would have included grocery stores if they intended to include grocery stores.

Second, the plaintiffs assert that *Scarlata* is distinguishable because in *Scarlata* the creditor had a history of extending credit to the debtor, and that is not the circumstance in this case. The cases may be distinguishable on that point, but the distinction is meaningless. It fails to demonstrate fraud because it fails to overcome the holding in *Williams,* 458 U.S. at 284, 102 S.Ct. 3088, noted above, and, subsequently, in *Scarlata, Trevisan,* and *Childers.*

The plaintiffs' Motion for Default Judgment is DENIED. This adversary proceeding will be dismissed if the plaintiffs fail to request a "prove-up" hearing within 30 days of this decision.

## ORDER

The Court having this day entered its memorandum decision in the above-entitled matter,

IT IS HEREBY ORDERED that plaintiffs' Motion to Reopen is GRANTED.

IT IS HEREBY ORDERED that plaintiffs' Motion for Default Judgment is DENIED.

IT IS FURTHER ORDERED that this adversary proceeding will be dismissed if the plaintiffs fail to request a "prove-up" hearing within 30 days of this decision.